Willard La Vern PEALO et al.,
Plaintiffs,

v.

FARMERS HOME ADMINISTRATION et al., Defendants.

Civ. A. No. 1028-73.

United States District Court,
District of Columbia.

July 31, 1973.

Lee P. Reno, Florence Wagman Roisman, Anthony Z. Roisman, Washington, D. C., for plaintiffs.

Harold H. Titus, Jr., U. S. Atty., Arnold T. Aikens, Thomas G. Corcoran, Jr., Asst. U. S. Attys., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION AND BACKGROUND

Plaintiffs herein are three married couples who brought suit against the Farmers Home Administration of the United States Department of Agriculture, the Secretary of Agriculture, various officials of the Farmers Home Administration (FmHA), and Roy Ash, as Director of the Office of Management and Budget (OMB), seeking a Court Order requiring Defendants to implement the Farmers Home Administration's interest credit loan program effectively and in good faith so as to achieve the national housing goals established by Congress. Plaintiffs sue on their own behalf and on behalf of all other intended beneficiaries of the interest credit loan programs. A hearing was had on Plaintiffs' Motion for Preliminary Injunction, at which time it was agreed by all parties that the hearing could be treated as a hearing on the merits of Plaintiffs' claims.[1] The parties also agreed that there is no genuine issue of material fact involved, and the Court will therefore treat Plaintiffs' Motion for Preliminary Injunction as a Motion for Summary Judgment. For the following reasons, the Court is of the opinion that Plaintiffs' Motion for Summary Judgment should be granted.

Briefly, the FmHA's interest credit loan program is part of a statutory scheme set forth in Title V of the Housing Act of 1949, as amended, which was devised to make housing in rural areas available to those whose incomes would otherwise be inadequate to secure decent housing. In Title V of the Housing Act of 1949,[2] Congress authorized the Secretary of Agriculture, through FmHA, to extend financial assistance to improve living conditions on farms. The Act created, *inter alia,* the Section 502 program, 42 U.S.C. § 1472, which authorized the FmHA to make direct loans at not more than four per cent interest per year, amortized for 33 years, to owners of adequate farms who were unable to obtain credit on terms which they could reasonably fulfill. In the 1960s, the FmHA rural housing programs were expanded, and eligibility for Section 502 was broadened to include any low- or moderate-income person who desired to live in a rural area, was unable to otherwise secure decent housing, and could reasonably be expected to repay the loan. The Senior Citizens Act of 1962 added Section 515 to Title V of the Housing Act of 1949, 42 U.S.C. § 1485, and authorized FmHA to make direct loans to nonprofit and consumer cooperatives at below-market interest rates to provide rental housing for elderly persons and families of low and moderate income. Section 515 has been amended several times so that now housing built under this section can be rented by any low- or moderate-income person or family.

The Housing and Urban Development Act of 1968 added Section 521 to Title V of the 1949 Act, 42 U.S.C. § 1490a, which has come to be known as the "in-

---

1. Rule 65 of the Federal Rules of Civil Procedure.

2. 42 U.S.C. § 1471 et seq.

**1322**

terest credit program," and which is the subject of this action. Section 521 permits the Secretary of Agriculture to set interest rates on loans made under Sections 502 and 515 as low as one per cent in order to serve lower-income borrowers and occupants. Although a loan under this section formally bears the maximum interest rate, interest payments for lower-income borrowers are "credited," i. e., subsidized, in some amount which reflects the difference between what the borrower would pay at the maximum rate and what the borrower actually pays at the lower effective rate.

Congress has put no limit on the amount or value of loans under Sections 502 and 515. FmHA makes its loans out of the Rural Housing Insurance Fund, which was established under the Housing and Urban Development Act of 1965 by adding Section 517 to Title V, 42 U.S.C. § 1471, and the Fund's notes are sold to investors. Each year, Congress then appropriates an amount sufficient to reimburse the Insurance Fund for the actual amounts by which interest payments, made from the Fund each year to its investors, exceed the interest due from individual and organizational borrowers.[3]

On January 8, 1973, the FmHA announced an immediate cessation of interest credit loans under Sections 502 and 515 as part of a "Government-wide program" which had been announced by the Secretary of Housing and Urban Development and which placed an 18-month moratorium on the Federal housing programs administered by HUD. The FmHA loan programs were to continue, but without interest credit.

All of the Plaintiffs have applied for Section 502 loans. Two of them have been declared eligible for such loans. None of them will be able to receive interest credit loans by virtue of the FmHA's action on January 8, 1973. Without interest credit loans, none of the Plaintiffs will be able to secure decent housing.

## II. THE CLASS ACTION ISSUE

A. *The Court Will Certify This Matter As A Class Action Pursuant To Rule 23 Of The Federal Rules Of Civil Procedure.*

■ The Court is of the opinion that this matter is appropriate for class action treatment, the class of plaintiffs consisting of all those who are or may be eligible for interest credit loans under Sections 502, 515 and 521 of the Housing Act of 1949, as amended. The prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met, and even though the named Plaintiffs, as class representatives, have applied only for Section 502 loans, the legal issues are the same whether they had applied for Section 502 or 515 loans, and the Court cannot discern any conflicting interests between these Plaintiffs and members of the class who have applied for Section 515 loans. The class is certifiable under either Rule 23(b)(1)(B) or 23(b)(2), in that adjudication of the claims of the named Plaintiffs would as a practical matter be dispositive of the interests of other class members not parties and the Defendants have acted or refused to act on grounds generally applicable to the class.

## III. ISSUES

The issues in this case are simply whether the Defendants have the discretion and authority to suspend these interest credit loan programs, and whether their actions were consistent with their duties under Article II of the Constitution.

## IV. DISCUSSION

A. *The Relevant Statutes Do Not Vest In The Defendants The Discretion And Authority To Suspend The Rural Housing Interest Credit Programs, And Defendants' Actions In Doing So Violate Their Duties Under Article II Of The Constitution.*

3. 42 U.S.C. § 1490a(c).

The arguments advanced by both sides to this litigation are essentially similar to the arguments of the parties in the case of Commonwealth of Pennsylvania v. Lynn,[4] and the Court is of the opinion that the principles set forth in its Opinion in the latter case are similarly applicable here. This is so even though the program under consideration in the instant case is much narrower than those under consideration in *Lynn*. Both the HUD programs involved in the *Lynn* case and the Farmers Home Administration programs involved here are directed to the same goals and serve the same elements of the population though in different sections of the country. Those goals are the "realization as soon as possible of . . . a decent home and a suitable living environment for every American family", to be accomplished in part through the construction and rehabilitation, by 1978, of six million housing units for low and moderate income families.[5]

Section 521 of Title V, 42 U.S.C. § 1490a, provides in pertinent part:

"(a) Notwithstanding the provisions of sections 1472, 1487(a) and 1485 of this title, loans to persons of low or moderate income under section 1472 or 1487(a)(1) of this title, and loans under section 1485 of this title to provide rental or cooperative housing and related facilities for persons and families of low or moderate income or elderly persons and elderly families, shall bear interest at a rate prescribed by the Secretary[6] . . .: *Provided,* That such a loan may be made only when the Secretary determines that the needs of the applicant for necessary housing cannot be met with financial assistance from other sources . . . ."

Defendants contend that this Section only avoids the requirement of 42 U.S.C. § 1472 "that the applicant has the ability to repay in full the sum to be loaned with interest . . ."; that the section does not command that there shall be "interest credit" loans; and that the Secretary of Agriculture is enabled to decide, within certain limits, what the interest rates will be on loans under Sections 1472, 1487(a)(1), and 1485. Moreover, Defendants further argue that on its face Title V gives the Secretary total discretion to spend money in the Rural Housing Insurance Fund on any of the programs authorized or not to spend it at all for a particular program.

The Court does not believe that once the Secretary has exercised his discretion and determined that "the needs of the applicant for necessary housing cannot be met with financial assistance from other sources," he may then disregard this finding and charge the maximum amount of interest allowable on such housing loans, thus precluding loan applicants from being able to obtain decent housing. As amply demonstrated by two of the Plaintiffs herein, qualification for a Section 502 (or a 515) loan is a cruel joke if decent housing cannot be obtained in absence of interest credit for the loan. The interest credit program cannot be viewed in a vacuum. It forms an integral part of the rural housing program and the federal housing program in general. As such its suspension affects the functioning of the program as a whole. "In fact, it is in derogation of it."[7]

The Court is cognizant that Section 521 may be susceptible of varying interpretations concerning the mandatory nature of the language employed therein.

---

362 F.Supp. 1363, decided July 23, 1973.

42 U.S.C. § 1441a.

The rate the Secretary may prescribe is limited by the "current average market yield on outstanding marketable ob-

ligations of United States" and one per centum per annum.

State Highway Commission of Missouri v. Volpe, 479 F.2d 1099 (C.A.8, 1973), reprinted at 119 Cong.Rec., S 7568, S 7570 (April 17, 1973).

**1324**

In interpreting the statute, the Court has therefore attempted to ascertain the intent and mandate of Congress consonant with its overall policies. In this regard, it is instructive to note a portion of an opinion by former Assistant Attorney General William H. Rehnquist, now a Justice of the Supreme Court. He stated: [8]

> "[On]the question of trying to find a mandatory intent on the part of Congress, it is not a question of looking for the word 'shall' as opposed to 'may'. Our office, in the memo that was published in the Congressional Record in December, 1969, concluded that in providing for certain formula grants for schools . . . Congress had indicated that these were to be spent, not necessarily because it said they shall be spent, but just from taking the overall language of the authorization bill, the enabling statute if there was one [and] the particular appropriations language, and construing them together to try to find on a reasonable basis what intent Congress manifested."

In employing this general methodology, the Court notes that Section 2 of the Housing Act of 1949, 42 U.S.C. § 1441, provides that Federal agencies "shall exercise their powers, functions, or duties under this or any other law consistently with the national housing policy . . . ." When Section 521 is construed in light of this mandate, the only "reasonable basis" is that the interest credit program was intended by Congress to be carried out, and that the Defendants have frustrated that intent.

 The interest credit program added yet another means by which the na-

tional objective of providing "a decent home and a suitable living environment for every American family" could be realized. Each year, Congress has recognized the importance of the program by appropriating the funds required by Section 521 expenditures. Defendants have chosen to disregard that evidence of Congressional intent and have ignored the stated goal of Congress—a goal which is tremendously important not only to those who cannot afford non-subsidized housing, but a goal which is of importance to every citizen concerned with the welfare of our country. Defendants through their actions have placed a blockade in the road to decent housing for all. These actions are in contravention of Defendants' statutory authority and their authority under the Constitution. It is the Court's duty and function to insure that the blockade is removed so that forward movement may continue.

## V. CONCLUSION

 It should be made clear that while the Court is requiring the Defendants to implement the Section 521 interest credit loan program, the Secretary must determine how that program shall operate in a particular case, or whether any relief at all is warranted in a particular claim for interest credit. Those are matters within the discretion of the Secretary, to be determined according to the found needs of individual applicants.

The Court will enter an Order granting Summary Judgment for the Plaintiffs and directing the Defendants to implement the interest credit loan program pursuant to Section 521.

---

8. Memorandum Re Presidential Authority to Impound Funds Appropriated for Assistance to Federally Impacted Schools (Dec. 1, 1969), reprinted in Hearings on Executive Impoundment of Appropriated Funds Before the Subcommittee on Separation of Powers of the Senate Judiciary Committee, 92d Cong., 1st Sess., at 234 (1971).