**UNITED STATES of America**

v.

**Betcher GOMILLER, et al.**

**No. GC 79–208–WK–P.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Nov. 18, 1981.

Falton O. Mason, Jr., Asst. U. S. Atty., Oxford, Miss., for plaintiff.

Leonard McClellan, Oxford, Miss., for defendants.

MEMORANDUM OPINION

KEADY, Chief Judge.

In this action, the United States seeks judicial foreclosure of the real estate deed of trust on the residence of defendant Betcher Gomiller for failure to make payments on a purchase money loan she obtained from the Farmers Home Administration (FmHA) on August 18, 1976. Defendant contests the foreclosure on the ground that she was not given proper notice of the availability of moratorium relief to suspend her payment obligation. After consideration of the legal memoranda submitted by counsel and the transcript of a full evidentiary hearing before District Judge Orma R. Smith, which the parties have agreed we may consider without a de novo hearing, we make findings of fact and conclusions of

law required by Rule 52(a), F.R.Civ.P., as follows:

## I. FINDINGS OF FACT

On August 18, 1976, defendant Betcher Gomiller obtained a rural housing loan from FmHA for $14,600 to acquire a residence in Carroll County, Mississippi. She executed a deed of trust on the property to secure repayment of the loan which called for 396 equal monthly payments of $111 beginning September 18, 1976. The grant of a $33 interest credit reduced her monthly payments to $78 until August 18, 1978, when her monthly payments were raised to $90 because a higher income had reduced her interest credit to $21. Defendant made timely payments for September and October 1976, but made no further payments until 1977 when she made six payments of $78, one payment of $178, and another payment of $380. In 1978, defendant made three payments of $200 and one payment of $42.50; and in 1979, after signing an Additional Partial Payment Agreement to pay an additional $80 per month to meet her past due obligation, made only one payment of $60. When no payments were thereafter made, plaintiff filed this foreclosure action December 4, 1979.

Defendant attributed her inability to make timely payments to medical expenses, automobile payments, high utility bills, and the expense of supporting two young children. In October 1976 defendant was confined to the hospital for five days and unable to work for a period of seven weeks. Upon returning to her job at the Baldwin Piano Company in Greenwood, she received $55 per week as workman's compensation for the time away from work, whereas she had been receiving approximately $95 per week take-home pay prior to her illness. Insurance paid all medical and hospital expenses.

In May 1979, defendant bought a 1972 model Chevrolet for $1,512.18 to travel to and from work. Her monthly payments were $84. She also testified that her utility bills were approximately $100 per month and that she could not meet all of her financial obligations. Nevertheless, defendant's W–2 forms from her employer show that her income has risen each year with her earning $4,646.39 in 1976, $5,806.92 in 1977, $6,032.22 in 1978, $6,582.99 in 1979, and $6,964.39 in 1980.

The basic factual dispute is whether defendant was properly advised of her right to apply for moratorium assistance. At the loan closing in August 1976, defendant signed a document, Form 427–2, indicating the areas of the loan agreement that were discussed with her. This form did not mention moratorium relief. It is undisputed that defendant was not informed of the availability of moratorium relief at the loan closing.

On September 7, 1977, after defendant had failed to make timely payments, the acting State Director of FmHA, John S. Cassell, sent defendant a notice of indebtedness and demand for payment, declaring the entire amount of the loan immediately due and payable. The notice threatened foreclosure if the loan was not repaid. It made no direct mention of the availability of moratorium relief. When defendant made a $380 payment, no foreclosure action was taken.

In 1978, defendant again fell behind in her payments. Melvin Miles, the FmHA county supervisor, sent letters to defendant on March 13, April 6 and 13, September 27, and November 1, 1978, advising her that she must take some action to avoid foreclosure. These five letters specifically provided that she must either:

1. Bring your account current and maintain it on a current basis.

2. Pay your account in full by refinancing or sale of the property.

3. Transfer the property to a person eligible for an FmHA loan and who will assume the debt.

4. Voluntarily convey the property to FmHA in return for a Release from Liability.

Each letter also contained the following paragraph:

You may be interested in knowing that you may apply for a moratorium on payments if due to circumstances beyond your control you are unable to continue making schedule payments on your rural housing loan account without unduly impairing your standard of living. Some of these circumstances are: loss of your job, or sudden reduction of income from other sources; a loss of income or a substantial increase in expenses due to injury, illness, or death in the family; or under certain conditions, in case of separation when your spouse is living apart from the family and the rural housing financed dwelling.

Supervisor Miles and George Morgan, an FmHA field worker, also visited with defendant on numerous occasions. Miles testified that he discussed moratorium relief with defendant, but that he had already determined she did not qualify since the loan payments, taxes and insurance on the house did not exceed 30% of her monthly income. Miles also stated that when a borrower becomes delinquent on his payments, he is automatically considered for a moratorium, but is not given an application form unless he specifically requests one. Since Miles had determined that defendant was ineligible for moratorium relief, he formulated a supplemental payment plan in December 7, 1978, by which defendant agreed to pay $80 per month in addition to the regular monthly payment until all past due amounts were brought current.

In 1979, defendant continued to have payments in arrears. Miles sent notices to her on February 8, March 30, April 25, and June 20, 1979, which contained the same language as the letters sent to her in 1978, including the right to apply for moratorium relief. Finally on July 20, 1979, Robert Thames, FmHA Acting State Director, sent defendant a notice of acceleration of indebtedness and demand for payment. When payment was not forthcoming, this foreclosure action was instituted.

Sarah James, FmHA County Office Assistant, testified that on December 21, 1979, two Legal Service attorneys representing defendant, visited the office and inquired as to why defendant had not been granted moratorium relief. Ms. James responded that she did not know the reason. Since employing attorneys, defendant has continued to live in the residence, has not sought moratorium relief, nor made further payments on the indebtedness.

Defendant, age 44, is an uneducated person who can neither read nor write. Her 16-year old daughter, Cassandra, or her daughter's friends customarily got the family mail at the post office. Defendant would usually place her letters on a dresser, to be read to her by her daughter or Edith Gomiller, her daughter-in-law. Defendant did not remember that the FmHA letters read to her mentioned payment moratorium. Cassandra did not testify. Edith Gomiller recalled reading one FmHA letter but said that it made no mention of moratorium relief. Despite defendant's contrary testimony, we find as a fact that she received the FmHA collection letters, they were read to her by family members, but that because of her limited education, she was unable to fully comprehend the import of the notices.

We further find as a fact that Miles and Morgan, aside from the letters, did not orally inform defendant of her right to apply for a payment moratorium. Although Miles discussed a payment moratorium at least once, he did not state whether he told defendant she could apply for the relief. To the contrary, he testified that he determined on his own that she was ineligible for a moratorium. We infer that his conversations with defendant had the effect of discouraging her from taking any step to apply. Despite her continued delinquency and sending several letters to defendant, Miles did not present her with an application form that was readily available, nor did he ever tell her that his decision as to ineligibility could be appealed.

## II. CONCLUSIONS OF LAW

The Housing Act of 1949, 42 U.S.C. § 1441 et seq., was enacted to promote "the realization as soon as possible of the goal of

a decent home and a suitable living environment for every American family." This goal has been expressly held applicable to the FmHA rural housing programs, including the § 502 Homeownership Program, 42 U.S.C. § 1472, under which defendant received her loan. *Pealo v. Farmers Home Administration*, 361 F.Supp. 1320, 1323 (D.D.C.1973). To help home buyers meet their loan obligations, Congress enacted § 505, 42 U.S.C. § 1475, which authorized the Secretary of Agriculture to grant moratorium on loan payments in cases of financial hardship.[1] In July 1974, the Secretary promulgated regulations to implement § 505, 7 CFR § 1861.10 (1975), but did not establish any criteria for notification to borrowers of the availability of relief. The regulations were found to be deficient since borrowers have a statutory right to notice and hearing concerning payment moratoriums. *United States v. White*, 429 F.Supp. 1245, 1252 (N.D.Miss.1977); *see Pealo, supra*. In 1977, this regulation was modified to require notification to borrowers at the time the loan is made and written notification in all collection letters. 7 CFR § 1951.-17(b) (1980). Oral notification and conferences with borrowers are not required under the regulation after the loan is made.

In the cause sub judice, FmHA officials did not explain the moratorium provisions to defendant when the loan was executed in August 1976. The regulations then in effect, however, did not require officials to make such explanations. After the regulations were modified in 1977 to require written notice of moratorium availability in all collection letters, FmHA included an explanatory paragraph in the collection letters sent to defendant. Also, the acceleration letter of July 20, 1979, contained the required reference to moratorium relief.

Thus, the literal requirements of § 1951.-17(b) were complied with and, ordinarily, a borrower desiring moratorium relief is required to submit a written application for such relief on a form devised by FmHA for that purpose. The borrower's failure to take this action after receiving the collection and acceleration letters would be a waiver of his statutory procedural rights to apply for moratorium relief. *See Hoffman v. HUD*, 519 F.2d 1160, 1165–66 (5 Cir. 1975).

■ This case, however, presents an exceptional situation. We must consider whether the liberal policies of the Housing Act of 1949, which was designed to promote home ownership through a program of home loan administration, were frustrated by acts of FmHA officials inconsistent with the goals of that legislation. 42 U.S.C. § 1441 directs FmHA to exercise its "powers, functions, and duties with respect to housing . . . consistently with the national housing policy declared by this Act and in such manner as will facilitate sustained progress in attaining the national housing objective hereby established." Although collection letters served to advise defendant that she might apply for moratorium, Miles unilaterally determined that she was not eligible because of her income and told her that she did not qualify. The defendant, being a person of very limited education, was deterred from making further inquiry, and it was reasonable for her to believe that there was nothing else she could do. *Cf. Gonzales v. County of Hidalgo*, 489 F.2d 1043, 1046 (5 Cir. 1973). Under these facts, defendant's failure to apply for moratorium relief in writing may not be fairly regarded as a waiver of her right to be considered for such relief pursuant to the regulation. Under the regulation, Miles, as County Super-

---

1. During any time that any such loan is outstanding, the Secretary is authorized under regulations to be prescribed by him to grant a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary, upon a showing by the borrower that due to circumstances beyond his control, he is unable to continue making payments of such principal and interest when due without unduly impairing his standard of living.

In cases of extreme hardship under the foregoing circumstances, the Secretary is further authorized to cancel interest due and payable on such loans during the moratorium. Should any foreclosure of such a mortgage securing such a loan upon which a moratorium has been granted occur, no deficiency judgment shall be taken against the mortgagor if he shall have faithfully tried to meet his obligation.

visor, could properly determine a borrower's eligibility only after he had been furnished with information supplied by the borrower and had verified its accuracy. Hence, Miles had no authority to predetermine defendant's eligibility. *Cf. United States v. Villanueva*, 453 F.Supp. 17, 18–19 (E.D.Wash. 1978). We must, therefore, conclude that the defendant was effectually precluded by Miles from requesting moratorium relief, and FmHA's action in this regard frustrated the policies of the Act as well as the purpose of the regulation. In our opinion, it is inequitable for the government to contend that the defendant waived her right to seek moratorium relief by not making written application. The government cannot proceed with foreclosure until the regulations relating to moratorium relief are fully complied with. *United States v. Trimble*, 86 F.R.D. 435 (S.D.Fla.1980); *U. S. v. Rodriguez*, 453 F.Supp. 21 (E.D.Wash.1978). We apply this principle here.

We are mindful that defendant has occupied the residence for nearly two years since the action was filed and has made no further payments on her loan.

Therefore, the court shall not dismiss the action but merely abate same to provide defendant with an opportunity to apply for moratorium relief, within 60 days from this date, and if her request is denied by the County Supervisor, to appeal such denial to the State Director or Acting State Director of Farmers Home Administration in accordance with the regulation.

Let an order enter.