**UNITED STATES of America, Plaintiff,**

v.

**John R. FORD, et al, Defendants and Counterplaintiffs,**

v.

**Billy O. HUGHES, Third-Party Defendant.**

**No. EC 82-8-WK-P.**

United States District Court,
N.D. Mississippi, E.D.

Dec. 8, 1982.

Falton O. Mason, Asst. U.S. Atty., Oxford, Miss., for plaintiff.

Clencie Cotton, Tupelo, Miss., for the Weatherspoons.

Frank Russell, Fulton, Miss., for Billy O. Hughes.

## MEMORANDUM OPINION

KEADY, District Judge.

This case was initiated on January 11, 1982, by the United States as plaintiff against John R. Ford and Barbara D. Ford seeking to evict defendants from the possession of their residential property in Itawamba County, Mississippi, on the ground that the rural housing loan made to them by Farmers Home Administration (FmHA) had been foreclosed for default in payment of the mortgage indebtedness and the property sold at foreclosure sale to the United States as the highest bidder. The named defendants answered denying validity of the foreclosure and asserted a counterclaim for injunctive relief against FmHA from conducting unlawful nonjudicial foreclosure proceedings against persons of counterclaimants' class having rural housing loans and to require FmHA to resort to judicial foreclosures. Supplemental proceedings as to the Fords resulted in the government's confession as to the invalidity of the Ford foreclosure. This resulted in dismissal of the government's original suit without prejudice.

Meanwhile, Archie L. Weatherspoon and Jessie C. Weatherspoon, husband and wife, had, pursuant to an order of the United States Magistrate entered on April 21, intervened to propound their claims against the government. The Weatherspoons, hereinafter plaintiffs, alleged in their counterclaim that their own residential property, also located in Itawamba County, was unlawfully foreclosed on February 1, 1982, in a nonjudicial sale conducted by FmHA, and that Billy O. Hughes had bought the property as highest bidder. Plaintiffs alleged that their property was foreclosed without personal notice to them or an opportunity to present their defenses to foreclosure and also without being advised of their right to apply for moratorium relief and other benefits provided by federal law.

Thereafter the government as counterdefendant and the Weatherspoons as counterplaintiffs filed cross motions for summary judgment. Both motions were denied. On July 19, the court granted Weatherspoons' motion to stay an action in the Chancery Court of Itawamba County by Hughes seeking an injunction for the Weatherspoons to surrender possession of the house to him as the present owner. The case was set for trial on the merits August 23, and Hughes was granted leave to file a claim against the government for refund of the purchase price in event the foreclosure was voided, or, if it was held valid, against Weatherspoons for possession of the house and for reasonable rent from the date of foreclosure. To this end Hughes timely filed appropriate pleadings. The court conducted an evidentiary hearing as scheduled. Following oral argument and having maturely considered the matter, the court finds that the case is ripe for decision and incorporates herein findings of fact and conclusions of law as follows:

## I. FACTS

On February 15, 1972, the Weatherspoons consummated a rural housing loan for $12,000 with FmHA, the proceeds of which were used to purchase a dwelling house eight miles southwest of Fulton. The indebtedness was secured by a first deed of trust on the residence payable over a period of 33 years commencing January 1, 1974,

and carrying an interest rate of 7¼% per annum. Although the note stipulated annual payments commencing at $866 and increasing to $966, monthly installments of $80.50 beginning January 1, 1974, were provided for. The loan was serviced by FmHA's Itawamba County office. In the ensuing years the Weatherspoons became delinquent in paying taxes for five years ending 1979, and failed to pay insurance premiums against the residence for three years. FmHA made advances to cover these items. Because of the delinquency, the account was several times placed in liquidation but then reinstated as the borrowers made payments on the delinquent balance. In December 1976 the Weatherspoons filed a petition in bankruptcy. FmHA's security was released from the bankruptcy proceeding, and the Weatherspoons on August 2, 1977, executed a new promise to FmHA to pay the mortgage indebtedness.

Thereafter, the borrowers were habitually in arrears in monthly payments. As relevant to the present case, the delinquency continued to exist on April 13, 1978, and even though they made a payment of $870 in 1980, they were still behind. On October 9, 1981, the Weatherspoons reported a joint annual income of $11,000. At that time, Archie Weatherspoon was notified that the account had to be made current if he wished to keep the house.

Notwithstanding FmHA's collection efforts, the delinquency persisted until June 26, 1981, when Archie Weatherspoon appeared at the FmHA County office and conferred with Donald F. Holley, County Supervisor. At this meeting, Holley in-

formed Weatherspoon that the account had a delinquency of $1,474.33. Holley also advised Archie Weatherspoon of the conditions set forth in FmHA's prior letter to him dated May 26, 1981, the relevant portions of which are set forth in the margin below.[1] On that date, Archie Weatherspoon made a $500 payment and agreed to pay FmHA $100 each week until the account was brought current. The various options set forth in the FmHA letter to Weatherspoons were discussed. Despite this promise, the Weatherspoons made no payments thereafter.

Between April 13, 1978 and May 26, 1981, the Weatherspoons were sent five notices by the FmHA County office which contained an identical paragraph as to moratorium relief. Note 1. The Weatherspoons never asked for moratorium relief nor inquired of Holley or any other FmHA official whether they were eligible for such relief to defer the monthly payments during a period of financial crisis. Both Archie and Jessie were regularly employed, and there is no evidence that either became disabled because of accident, illness or injury to them or any family dependent, nor is there evidence of any circumstance brought to FmHA's attention indicating financial crisis such as to impair their standard of living.

FmHA determined to accelerate the debt and proceed with foreclosure. On August 27, 1981, FmHA mailed the Weatherspoons OGC Form 1438 Notice of Acceleration of Indebtedness and Demand for Payment. This notice read in part as follows:

> You have breached the obligations under said deed(s) of trust by:

1. Your account has been delinquent for a year and better.

You have the following options:
  1. Pay the account current and keep current.
  2. Pay account in full by sale of property or refinancing.
  3. Transfer the loan to another eligible applicant.
  4. Deed the property back to the government.

If we do not hear from you within fifteen days, we will send your file to our State Office with recommendation for foreclosure.

"You may be interested in knowing that you may apply for a moratorium on payments if due to circumstances beyond your control you are unable to continue making scheduled payments on your rural housing loan account without unduly impairing your standard of living. Some of these circumstances are: Loss of your job, or sudden reduction of income from other sources; a loss of income or a substantial increase in expenses due to injury, illness, or death in the family, or under certain conditions, in cases of separation, when your spouse is living apart from the family and the RH financed dwelling."

Failure to pay the principal and interest as same became due and payable.

Failure to keep the security property insured as required.

Therefore, the United States of America is hereby informing you of its election to accelerate the indebtedness secured by said deed(s) of trust.

Accordingly, the United States of America declares that the entire unpaid indebtedness is due and payable immediately. The indebtedness referred to consists of the

principal sum of $12,272.69

plus interest of $483.39

accrued through July 27, 1981, with interest accruing thereafter at the daily rate of $2.3417. You are hereby notified that unless said indebtedness is paid in full within 20 days from the date of this notice, the United States of America will take action to foreclose. Any negotiation by the United States of America of any remittance tendered by you, whether mailed to the National Finance Office or whether paid directly to the County Supervisor or State Director's Office, will not constitute a waiver of this acceleration or institution of foreclosure action. Payment of the indebtedness should be made by cashier's check, certified check, or postal money order payable to the Treasurer of the United States and delivered or mailed either to this office or to our Farmers Home Administration County Supervisor, Donald F. Holley, whose address is Spencer Building, 302 West Cedar Street P.O. Box 159, Fulton, MS 38843.

HOWEVER, YOU HAVE THE OPPORTUNITY TO HAVE A MEETING BEFORE THIS FORECLOSURE TAKES PLACE. If you wish to make use of this opportunity to meet because you believe that the United States is in error in accelerating your account(s) and proceeding with the foreclosure, or because you have not been advised of your right to request a moratorium on payments on your rural housing loan account, you should IMMEDIATELY contact the District Director of the Farmers Home Administration in writing at the following address:

Mr. Johnny H. Dean
Old Bank Building
P.O. Box 27
Calhoun City, MS 38916

You should set out all the information you believe should be considered by the Farmers Home Administration. You may also request to appear in person to present your information. The District Director will arrange a mutually convenient time for such a meeting. The District Director will also inform you of the location of the meeting. It will either be in the County Office or the District Office.

Please remember that if you wish to take advantage of this opportunity to be heard, you may IMMEDIATELY contact the District Director because the United States plans to proceed with foreclosure proceedings shortly after September 16, 1981.

The above notice was sent by certified mail to the Weatherspoons at their usual mailing address. A notice of certified mail was placed in their rural mail box and on September 4 Linda Weatherspoon, the 20 year old daughter of Archie and Jessie Weatherspoon, received the letter, signing for the certified mail, opened the envelope, read the notice and placed it on the breakfast table in the family home. Linda was a high school graduate with one year of junior college. She routinely read letters to her parents since neither of them could read. It was customary for Linda and at times her older sister, Evelyn, who was 25 and had junior college training, to assist their parents in reading mail. Although Linda testified that she did not recall reading the above notice to her parents, and while both Archie and Jessie denied having knowledge of the notice, the court finds as a fact that they always received and were aware of all notices sent by FmHA and other creditors at Route 4, Box 34 and were aware of the contents of FmHA's notice of August 27 as well as FmHA's prior notices of April 13, 1978, June 15, 1979, October 12, 1979, March 12, 1980 and May 26, 1981.

County Supervisor Holley testified that during his 17 contacts with the Weatherspoons during the course of the loan they had never requested moratorium relief, nor advised him they had suffered loss of income by reason of injury, sickness or other cause, and that he was at no time presented with financial information from the Weatherspoons indicating that their joint income was any different than $11,000 annually as shown in his records. Holley stated that from the information in his file, the Weatherspoons could not qualify for either moratorium relief or interest credits, and that they never requested forms to make application, notwithstanding the several notices advising them of their right to moratorium, as well as his conference with Archie Weatherspoon in which moratorium relief was specifically discussed.

Hughes, as successful bidder, paid $12,887 for the property. The Weatherspoons since February have refused him possession of the property, which has a fair rental value of $250 per month.

John Dean, FmHA District Director, testified that whenever a borrower contacts him in respect to the Notice of Acceleration of Debt and Demand for Payment, he routinely establishes a time and place for hearing, the borrower is notified and is accorded an opportunity to show why the foreclosure should not proceed. At such hearing the borrower may have counsel or other advisors present. Statements offered at the hearing are taped; when a decision is reached, the borrower is notified of the results, and, if adverse to him, he is advised of his right to take an appeal to the state office. During the past 12 months Dean conducted 36 such hearings. He estimated that during the preceding year 60 foreclosures had taken place in Itawamba County out of a total portfolio of 1500 rural housing loans. According to Dean, interest credits may be extended only upon verified financial information supplied by borrower, and once a borrower becomes qualified to receive an interest credit, he is notified of the necessity to submit additional financial information periodically.

## II. LAW

The heart of the Weatherspoons' claim involves their due process rights in the context of a nonjudicial foreclosure accomplished under state law pursuant to provisions in the deed of trust. It is well settled that the Due Process Clause of the fifth amendment mandates that FmHA provide mortgagors with adequate notice and opportunity for a hearing before foreclosure of an FmHA home loan. *United States v. White,* 429 F.Supp. 1245, 1250 (N.D.Miss.1977); *see Aetna Insurance Co. v. Hartshorn,* 477 F.2d 97 (5 Cir.1973); *Rau v. Cavenaugh,* 500 F.Supp. 204 (D.S.D.1980). If adequate notice and opportunity for a hearing is provided, nonjudicial foreclosure pursuant to state law is constitutionally permissible.

> The nub of the question here ... is not the lawfulness of the statute, but whether the contractual provision is [made] valid and binding between the parties [by the initial agreement or by subsequent conduct of the borrower]. (Brackets in original).

*White, supra* at 1251. Therefore, provisions in the deed of trust allowing nonjudicial foreclosure can be made valid by holding an administrative hearing patterned after *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), or by the borrower's relinquishment of his right to a hearing either by contractual waiver, *United States v. Wynn,* 528 F.2d 1048 (5 Cir. 1976), or waiver by conduct. *Hoffman v. United States,* 519 F.2d 1160 (5 Cir.1975).

In the instant cause no hearing was held and it appears that the Weatherspoons' waiver of their due process rights by signing the note and deed of trust was not voluntary because of the inequality of bargaining power with the FmHA. *Rau, supra,* at 207–08; *White, supra* at 1251–52. Nonetheless, we find that the Weatherspoons waived their right to a hearing by failing to respond to notices mailed to them as well as personal meeting with the county supervisor. It is manifest that the Weatherspoons were apprised of their rights and

the impending foreclosure, and understood their options, yet they failed to take any action to seek a hearing and present reasons for having the foreclosure postponed. By making no effort to contact FmHA officials to be heard, the Weatherspoons waived their fifth amendment rights to a hearing.

■ In conjunction with their constitutional claims, the Weatherspoons point out that the deed of trust required that all written notices were to be provided to them by certified mail. Only the acceleration notice was sent by certified mail; the other notices were sent by ordinary mail. Irrespective of this requirement, the Weatherspoons actually received written notices of their constitutional and statutory rights. To hold notice ineffectual because not sent by certified mail would be to elevate form over substance. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Since defendants received constitutionally adequate notice, their argument must fail. *See Lehner v. United States,* 685 F.2d 1187, 1190–91 (9 Cir.1982).

■ The Weatherspoons further contest the validity of foreclosure by asserting they were not given proper notice and instruction about the possible availability of moratorium relief. It is true that FmHA borrowers have a statutory right to notice and hearing concerning payment moratorium, *White, supra* at 1252, but 7 CFR § 1951.17(b)(ii) (1981) only requires that the notice of its availability be provided in writing when the county supervisor learns of a change in the borrowers' condition which would justify the granting of a moratorium, sends the borrower a collection letter, or sends a notice of acceleration and demand for payment. When the borrower is given such written notice, the regulation requires that he affirmatively request an application for moratorium relief. The borrower's failure to take this action after receiving FmHA's collection and acceleration letters that specifically informed him of his right to request relief is a waiver of his procedural rights unless he is deterred from making further inquiry because of limited education and understanding or unilateral determination of ineligibility by FmHA officials. *United States v. Gomiller,* 545 F.Supp. 17, 21 (N.D.Miss.1981). When FmHA has complied with the moratorium regulations and the borrower has either exhausted his moratorium rights pursuant to timely application, or has waived them, FmHA may proceed with foreclosure. *Id.* at 21.

As stated above, the evidence presented at trial conclusively established that the Weatherspoons were aware of their constitutional rights to a hearing[2] as well as their statutory rights to apply for a payment moratorium and other statutory relief. Unlike *Gomiller,* this case does not present a peremptory or unilateral determination by FmHA officials that the Weatherspoons could not qualify for moratorium or interest credit, thereby discouraging them from applying. It is unreasonable to expect that FmHA officials administering a substantial volume of rural housing loans should be required to do more than what was done in this case to inform the borrowers of their constitutional and statutory rights. Since the Weatherspoons have been fully provid-

---

**2.** The Weatherspoons have asserted that FmHA failed to comply with its regulations by stating in its acceleration letter that they were entitled to a "meeting" rather than a "hearing." Though we consider this to be an insignificant question of semantics, we find the Weatherspoons' contention that 7 CFR § 1900.56(a)(4)(vii) (1981) required the use of the word "hearing" to be in error. Section 1900.56(a)(4) provides for use of the word "hearing" only "in the event the *meeting* with the decision maker does not satisfactorily resolve their differences." Hence, this regulation applies only in the case of an appeal of the decision reached at the first "meeting" which must be mentioned in the original acceleration notice under 7 CFR § 1951.17(b)(iii) (1981). The regulations have been since the date of the Weatherspoon foreclosure changed to require use of the word "hearing" in both instances, 7 CFR § 1951.313(b)(iii) (1982), but 7 CFR § 1951.17(b)(iii) (1981) governs the instant action. Hence, FmHA used the proper language to comply with the specific language used in their regulations.

ed with adequate information respecting those rights, they may not sit idly by and profit from their own inaction.

An order shall issue dismissing the Weatherspoons' claim against the government, vacating the injunction against the state chancery court proceeding, and awarding possession of the property to Billy O. Hughes as purchaser to be delivered to him on February 1, 1983, together with judgment of $3,000 as reasonable rent since the date of foreclosure.