UNITED STATES of America, Appellee,

v.

CHILDERS et al., Appellants.

[Cite as *United States v. Childers,* 152 Ohio App.3d 622, 2003-Ohio-2505.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 02CA11.

Decided May 8, 2003.

Stephen D. Miles, for appellee.

Mark J. Cardosi and Southeastern Ohio Legal Services, for appellant Deborah Childers.

---

HARSHA, Judge.

{¶ 1} Deborah Childers appeals from the Lawrence County Common Pleas Court's judgment granting the United States of America's ("government") motion for summary judgment. Ms. Childers contends that the government's failure to service her loan properly precludes foreclosure of her mortgage. Specifically, she argues that the government was obligated to consider her request for payment-moratorium relief before it commenced foreclosure proceedings. We find that Ms. Childers has raised a genuine issue of material fact regarding whether she initiated the payment-moratorium relief process. Accordingly, we find that summary judgment was not appropriate and remand this matter to the trial court.

{¶ 2} In 1986, Larry and Deborah Childers obtained a rural housing loan from the Farmers Home Administration, now known as Rural Housing Services ("RHS"), an agency of the United States Department of Agriculture. The Childers obtained their loan under Title V of the National Housing Act of 1949, Section 1471 et seq., Title 42, U.S.Code, which contains a loan program designed to help low-income individuals or households purchase homes in rural areas. In connection with the loan, the Childerses executed a mortgage deed granting RHS a security interest in real property located at 1129 County Road 26, Ironton, Ohio.

{¶ 3} Subsequent to obtaining the loan, Larry and Deborah Childers divorced. After the divorce, Ms. Childers began to experience financial difficulties. According to Ms. Childers, she repeatedly contacted RHS requesting loan assistance but received no reply. Ms. Childers does not dispute that she defaulted on her mortgage obligation.

{¶ 4} In August 2000, the government filed a complaint in foreclosure against Larry and Deborah Childers. In addition, the government named as defendants three other parties who might have had an interest in the property.[1] One month later, Ms. Childers filed her answer, asserting as her defense RHS's failure to utilize loan-servicing tools to help her avoid foreclosure. Mr. Childers filed no answer in response to the complaint. In March 2001, the government filed a motion for summary judgment. After an oral hearing on the motion for

---

1. The complaint also named as defendants George F. White, M.D., Inc. (by virtue of a judgment lien), the Lawrence County Treasurer (for property taxes), and any unknown occupants of the premises.

summary judgment, the court directed the government's counsel to prepare a judgment entry in its favor. The court indicated that before sending the entry to the court for its signature, the government's counsel should send a copy to Ms. Childers's counsel for review. However, due to an oversight, the entry was filed without first having been sent to Ms. Childers's counsel. In early 2002, Ms. Childers discovered the error and filed a Civ.R. 60(B) motion. Subsequently, the court filed an amended entry granting summary judgment to the government. Ms. Childers now appeals, raising the following assignment of error: "It was an error of law for the trial court to grant summary judgment to the United States Rural Housing and Community Development Services (RHCDS) in a foreclosure action when the appellant-borrower had asserted facts material to determining the jurisdiction or legal authority of the RHCDS to pursue foreclosure."

{¶ 5} After receiving the parties' briefs, we asked that they submit supplemental briefs addressing the provisions for payment-moratorium relief.[2] Having received the supplemental briefs, we now address Ms. Childers's assignment of error.

{¶ 6} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; cf., also, *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine

---

**2.** {¶ a} Our entry asked the parties to submit supplemental briefs addressing the following three questions:

{¶ b} "1. Does the law require forbearance?

{¶ c} "2. How does the borrower obtain forbearance?

{¶ d} "3. Did appellant raise a genuine issue of material fact as to her compliance with the requirements for obtaining forbearance?"

issue for trial, and if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 145, 677 N.E.2d 308, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 295, 662 N.E.2d 264.

{¶ 7} Ms. Childers does not dispute that she defaulted on her mortgage obligation. However, she claims that the government is precluded from foreclosing on her home because it failed to service her loan properly. Specifically, she argues that she was entitled to be considered for a payment moratorium before the government commenced foreclosure proceedings. Ms. Childers indicates that she left numerous telephone messages with RHS asking for loan assistance, but that she never received a reply.

{¶ 8} The government, relying on *Cottrell v. United States* (M.D.Ala. 1997), 213 B.R. 33, argues that Ms. Childers failed to plead or prove that she had exhausted her administrative remedies. In *Cottrell*, the court determined that Section 6912(e), Title 7, U.S.Code precluded the plaintiff from bringing an action to declare RHS's foreclosure sale null and void. Section 6912(e), Title 7, U.S.Code, which pertains to the Department of Agriculture, requires a person to "exhaust all administrative appeal procedures * * * before the person may bring an action in a court of competent jurisdiction against—(1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department." Here, Ms. Childers is not bringing an action against the government; rather, she is defending an action brought by the government. Thus, Section 6912(e), Title 7, U.S.Code and *Cottrell* are inapplicable, and we will address Ms. Childers's argument.[3]

{¶ 9} Section 1475(a), Title 42, U.S.Code allows the Secretary of Agriculture to grant a loan payment moratorium to borrowers. It provides: "During any time that such loan is outstanding, the Secretary is authorized under regulations to be prescribed by him to grant a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary, upon a showing by the borrower that due to circumstances beyond his control, he is unable to continue making payments of such principal and interest when due without unduly impairing his standard of living. In cases of extreme hardship under the foregoing circumstances, the Secretary is further authorized to cancel interest due and payable on such loans during the moratorium. * * *" Section 1475(a),

---

3. In *Cottrell*, the court, after determining that exhaustion was required, considered whether the doctrine of equitable estoppel prevented the government from raising the exhaustion requirement. Ultimately, the court concluded that the plaintiff had not established the elements of estoppel. Here, the government argues that Ms. Childers did not raise estoppel as a defense. Since we find the government's reliance on *Cottrell* misplaced, we need not address its argument concerning Ms. Childers's failure to raise the defense of estoppel.

Title 42, U.S.Code. A borrower is eligible for a payment moratorium if the following three criteria are satisfied: "(1) Due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making scheduled payments because: (i) The borrower's repayment income fell by at least 20 percent within the past 12 months; (ii) The borrower must pay unexpected and unreimbursed expenses resulting from the illness, injury, or death of the borrower or a family member; or (iii) The borrower must pay unexpected and unreimbursed expenses resulting from damage to the security property in cases where adequate hazard insurance was not available or was prohibitively expensive. (2) The borrower occupies the dwelling, unless RHS determines that it is uninhabitable. (3) The borrower's account is not currently accelerated." Section 3550.207(a), Title 7, C.F.R.

{¶ 10} Neither party has directed us to current regulations or case law explaining the procedure a borrower must follow in order to obtain a payment moratorium. The cases Ms. Childers relies upon predate the current regulations, which the government first adopted in 1996. See 61 F.R. 59779. At the time those cases were decided, the regulations required the government to give notice to a borrower of the possible availability of moratorium relief. See *United States v. Shields* (D.Vt.1989), 733 F.Supp. 776 (addressing former Section 1951.313[b], Title 7, C.F.R.); *United States v. Trimble* (S.D.Fla.1980), 86 F.R.D. 435 (addressing former Section 1861.10[b], Title 7, C.F.R.). However, the current regulations contain no provision requiring the government to notify a borrower of the possible availability of moratorium relief. See Section 3550.207, Title 7, C.F.R. In its supplemental brief, the government calls our attention to *Farm Credit Serv. of Mid–America, ACA v. Runyan* (May 28, 1999), Champaign App. No. 98CA28, 1999 WL 335124. However, this case concerns the restructuring of a debt under the Farm Credit Act of 1987. The case makes no mention of the necessary procedures for obtaining moratorium relief under Section 1475(a), Title 42, U.S.Code.

■ {¶ 11} The statute authorizing payment moratoriums states that "the Secretary is authorized * * * to grant a moratorium upon the payment of interest and principal * * * *upon a showing by the borrower* that * * *." (Emphasis added.) Section 1475(a), Title 42, U.S.Code. The statutory language requiring a borrower to demonstrate his or her eligibility for moratorium relief presupposes that a borrower who requests such relief will be given the opportunity to make the required demonstration. Thus, a borrower who requests moratorium relief must be given an opportunity to demonstrate his or her eligibility for such relief. See *Ramey v. Block* (C.A.6, 1984), 738 F.2d 756, 761 (holding that a borrower who requests deferral relief under Section 1981a, Title 7, U.S.Code, a similar provision under the Consolidated Farm and Rural Development Act, must

be given an opportunity to demonstrate his or her eligibility for such relief). According to the government, in order to obtain a payment moratorium, the borrower must make a timely request, properly complete the necessary forms, and provide supporting documentation. Presumably, the necessary forms are supplied to the borrower upon his or her request for a payment moratorium, since there is no regulation requiring the government to supply the forms prior to that time.

{¶ 12} In her affidavit, Ms. Childers indicated that she began experiencing financial difficulties after her divorce. She stated: "4. I contacted representatives of the United States [Department] of Agriculture (USDA) in the time period of early 1999 through mid–2000. I left numerous telephone messages advising the USDA about my divorce and requesting assistance in preserving my home; 5. Despite the possible statements to the contrary, USDA representatives never contacted me in dealing with the problems I had making the home payment after my divorce." We find that these statements raise a genuine issue of material fact regarding whether Ms. Childers requested moratorium relief. If, as she claims, she contacted the government asking for assistance, then she was entitled to an opportunity to demonstrate her eligibility for moratorium relief.

{¶ 13} Previous cases recognize that the government must comply with the regulations relating to moratorium relief before it is entitled to foreclose its mortgage. *United States v. Rodriguez* (E.D.Wash.1978), 453 F.Supp. 21, 22; *United States v. Gomiller* (N.D.Miss.1981), 545 F.Supp. 17, 21. While these cases address the government's failure to comply with a regulation requiring it to notify a borrower of the possible availability of moratorium relief, we do not read these cases as limiting the government's duty to compliance with the former notice requirement only. Although the regulations no longer contain a notice requirement, the government must still comply with the existing statute and regulations relating to moratorium relief before foreclosing its mortgage. The statute authorizing payment moratoriums contemplates that a borrower who requests a payment moratorium will be given an opportunity to demonstrate his or her eligibility. Thus, if Ms. Childers requested a payment moratorium, she was entitled to an opportunity to demonstrate her eligibility for moratorium relief.

{¶ 14} The government argues that Ms. Childers's account is now accelerated and, therefore, she is not eligible for moratorium relief. However, we are not concerned with whether Ms. Childers presently qualifies for a payment moratorium. Our focus is on that period of time prior to acceleration during which Ms. Childers allegedly requested a payment moratorium.

{¶ 15} Given the statements in Ms. Childers's affidavit, we find a genuine issue of material facts exists regarding whether Ms. Childers requested a payment moratorium. If she did request a moratorium, then she should have been given

the opportunity to demonstrate that she was eligible to receive moratorium relief. Accordingly, Ms. Childers's assignment of error has merit, and we remand this case to the trial court for further proceedings, including determining whether Ms. Childers initiated the payment moratorium process.

Judgment reversed
and cause remanded.

PETER B. ABELE and KLINE, JJ., concur.