MIDWEST SPECIALTIES, INC., APPELLEE, *v.* FIRESTONE TIRE & RUBBER COMPANY, APPELLANT.

(No. 13349—Decided July 20, 1988.)

*Michael F. O'Loughlin* and *Theodore G. Gudorf,* for appellee.

*James C. Sennett, Robert S. Walker, Joseph D. Pollock* and *Laurel Nelson,* for appellant.

BAIRD, P.J. This cause came on before the court upon the trial court's order denying defendant's motions for judgment notwithstanding the verdict, directed verdict, and summary judgment. The case went to trial and the

jury awarded the plaintiff-appellee, Midwest Specialties, Inc. ("Midwest"), $402,000. We affirm.

In 1979, the defendant-appellant, Firestone Tire & Rubber Company ("Firestone"), was involved in the production of tank tread assemblies for the United States government. Part of Firestone's business included working with the plaintiff-appellee, Midwest. In early 1979, Richard Kennedy, Midwest's president, director, and sole shareholder, came up with an idea for a VECP[1] for a tank pad that involved changing the material used to make the tank pad backing plate. Kennedy thought that this would result in a significant cost savings to the government. Kennedy testified that he entered into a contract with Firestone in April 1979 regarding the VECP. Midwest would provide all technical data and samples, and Firestone would test, process and submit the VECP to the government. All profits were to be shared equally.

Kennedy testified that as of May 1979, all the necessary back-up material had been provided to Firestone, thereby completing Midwest's performance. Kennedy believed that Firestone's performance should reasonably have been completed within a few weeks. Over the next six months, the VECP documentation was forwarded to several different Firestone employees. On November 20, 1979, John Schneider, a Firestone employee based in Detroit, received the VECP information for review. He contacted Kennedy and arranged for a meeting to discuss submission of the VECP. Kennedy testified that shortly after that meeting he was informed that the

VECP had been submitted. On March 4, 1980, Kennedy received a telephone call from a government engineer who asked him several questions about the T130 pad, and then informed him that he was evaluating a suggestion by a government employee and that Firestone's VECP had not been submitted. Kennedy called Firestone at that point and complained that the VECP had not been sent in. By March 11, 1980, Firestone submitted the VECP. On May 1, 1980, the government accepted the VECP of Elmer Busse, the government employee. On February 23, 1981, the government rejected the Firestone VECP, stating:

"In the case of your VECP, I find that the impetus for any change from the T130 alumium track pad plate to a thinner plate made from high strength steel has come not from the Firestone VECP, but from Mr. Busse's suggestion. Further, I conclude that the impetus for your VECP submitted 11 March 1980 was the news of Mr. Busse's suggestion. * * *

"Based upon the facts set forth in this letter, the cases upon value engineering, and the provisions in the aforementioned contract clause itself, I am hereby rejecting your VECP #0387-1. * * *"

On March 7, 1986, Kennedy filed suit against Firestone claiming breach of contract. At trial, Midwest requested $754,989.05 in damages. The jury awarded $402,000 to Midwest. Firestone appeals.

Assignment of Error I

"The trial court erred in not granting Firestone's motions for judgment notwithstanding the verdict, directed

---

[1] A VECP is a proposal to the United States government by a prime contractor for a change in the design of a product being purchased by the government which is intended to result in a cost savings to the government. If accepted, a VECP could result in certain payments to the contractor by the government. The initials stand for "Value Engineering Change Proposal."

verdict and summary judgment because Midwest's claim of breach of oral contract is barred by the statute of limitations."

R.C. 2305.07 provides as follows:

"Except as provided in section 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

The issue presented to the trial court in the summary judgment motion was whether Midwest had filed its claim within six years of the accrual of the action. Firestone argued that the cause of action accrued at the time of the breach, which it contends was November 20, 1979, when a government employee submitted a VECP before Firestone did. Midwest argues that the cause of action did not accrue until some actual damages were suffered, and therefore the earliest date would be March 11, 1980, the date Firestone submitted its proposal, almost five months after Elmer Busse, a government employee, submitted his VECP proposal.

In reviewing a summary judgment, the trial and appellate courts use the same standard, that the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and if, when so viewed, reasonable minds can come to differing conclusions, the motion should be overruled. *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, 433, 21 O.O. 3d 267, 271, 424 N.E. 2d 311, 314-315. The reviewing court must follow the standard set forth in Civ. R. 56(C), which specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274.

Review of a motion for directed verdict does not present a question of fact or raise factual issues, but instead presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence. *Ruta* v. *Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 23 O.O. 3d 115, 430 N.E. 2d 935, syllabus. The trial and appellate courts, without weighing the evidence, must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds could come to but one conclusion on the evidence submitted, that conclusion being adverse to such party. If so, a directed verdict should be granted or affirmed. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d 177, 423 N.E. 2d 467. The standard of review for a motion for judgment notwithstanding the verdict is the same as that applicable to a motion for a directed verdict. *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275, 74 O.O. 2d 427, 430, 344 N.E. 2d 334, 338.

In ruling on Firestone's motion for summary judgment, the trial court concluded that the correct interpretation of the rule regarding accrual of the action is that Midwest's cause of action did not accrue until actual damages occurred. In its ruling, the trial court stated that the plaintiff did not suffer any actual damage until its proposal, submitted on March 11, 1980, was rejected, and the government employee's proposal was formally ac-

cepted on May 1, 1980. Therefore, the court held, the plaintiff's complaint was timely filed within the six-year statute of limitations. We agree with the trial court's determination. The Ohio Supreme Court has stated that:

"* * * Ordinarily, a cause of action does not accrue until actual damage occurs; when one's conduct becomes presently injurious, the statute of limitations begins to run. *State, ex rel. Teamsters Local Union 377*, v. *Youngstown* (1977), 50 Ohio St. 2d 200. * * *." *Children's Hospital* v. *Dept. of Republic Welfare* (1982), 69 Ohio St. 2d 523, 526, 23 O.O. 3d 452, 454, 433 N.E. 2d 187, 190.

In *Children's Hospital,* the Supreme Court held that the appellee's cause of action for amounts wrongfully withheld did not accrue until the money was actually withheld, and not at the time the entry was made in appellant's books of account which produced no immediate injury or damage to appellee. See, also, *Rose* v. *General Motors Corp., Frigidaire Div.* (S.D. Ohio 1983), 573 F. Supp. 747.

In reviewing the trial court's ruling, we do not think that it was error to find that the plaintiff's claim was not barred by the statute of limitations.

As Samuel Williston states:

"A breach of contract may be so slight as not to allow a recovery by the injured party of entire damages for the contract; in case of a bilateral contract, the breach may not even justify him in refusing to continue performance on his own part.

"A cause of action for breach of the entire contract has not yet arisen, and though by delay for the statutory period he may lose his right to recover damage for the slight breach which has already occurred, as a separate injury, yet if later the breach becomes material, or another and a material breach is committed, the statutory period in an action for the entire breach of the contract should be calculated from the time when the plaintiff was *first able to sue for an entire breach of the contract.*" (Emphasis added.) 18 Williston, Law of Contracts (3 Ed. 1978) 786, Section 2026B.

The record reflects that even though the government employee's proposal was submitted on November 20, 1979, the plaintiff was not even aware of this fact until March 4, 1980. Kennedy did not know whether or not Busse's proposal would be accepted, and Firestone worked quickly to submit the proposal on March 11, 1980. Up to this point, no actual damages had occurred. On May 1, 1980, the government accepted Busse's proposal, and it was not until February 23, 1981, that the government rejected Firestone's VECP. Looking at the evidence, it is clear that there is no genuine issue of material fact to be determined which would affect the statute-of-limitations defense. The earliest that actual damages accrued was on May 1, 1980, when the government accepted another proposal. While the parties may entertain a discussion as to the date of the actual breach, or even the date of the accrual of the action, which could be later than May 1, 1980, there exists no genuine issue of a fact that is material to the question of the statute of limitations. The plaintiff's claim was timely filed. Accordingly, we also hold that the trial court's denial of the motions for directed verdict and for judgment notwithstanding the verdict was correct. The first assignment of error is not well-taken.

### Assignment of Error II

"The trial court erred in not granting Firestone's motion for judgment notwithstanding the verdict because the jury's answers to the written interrogatories, which are inconsistent with the general verdict, show that Midwest did not prove its damages by a prepon-

derance of the evidence, and that the consequential damages sought by Midwest were not contemplated by the parties at the time they entered into the alleged oral contract."

As noted above, the standard of review for a motion for judgment notwithstanding the verdict is the same as that applicable to a motion for a directed verdict. *Posin* v. *A.B.C. Motor Court Hotel, Inc., supra.* Civ. R. 50(A)(4) states as follows:

"When Granted on the Evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

The trial and appellate courts, without weighing the evidence, must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds could come to but one conclusion on the evidence submitted, that conclusion being adverse to such party. If so, the motion should be granted. *Strother* v. *Hutchinson, supra.* Firestone asserts that the trial court erred in denying the Jnov motion because certain of the jury's answers to special interrogatories appeared to be inconsistent with the general verdict.

If it is reasonably possible to do so, special findings of a jury must be harmonized with its general verdict:

" 'If such ambiguous questions are submitted * * * they should be construed as the jury understood them. Otherwise their answer is not given the effect that the jury intend. By what means shall we ascertain the understanding of the jury? The party who propounds such questions — in this case, the defendant — is responsible for their ambiguous character, and all serious doubts should be resolved against him. Under such circumstances it should be presumed that the jury placed that construction upon the question which makes their answer thereto harmonious with their general verdict and with their answers to the other special questions. * * *' " (Citation omitted.) *Klever* v. *Reid Bros. Express, Inc.* (1949), 151 Ohio St. 467, 474, 39 O.O. 280, 283, 86 N.E. 2d 608, 611-612.

*Klever* makes it clear that the proponent of any ambiguous questions should have all serious doubts resolved against him. In the event of inconsistent answers to interrogatories on the same issue, it is the duty of the court to harmonize them, if possible, but if it is impossible to harmonize such answers then they cancel one another out and should be disregarded by the court. *Id.* at 476, 39 O.O. at 284, 86 N.E. 2d at 612.

In the instant case, three special interrogatories concerning the damages issue were submitted to the jury. These interrogatories and their answers are as follows:

"12. Do you find that Plaintiff is entitled to the recovery of damages for breach of contract?

"ANSWER: Yes.

"13. Do you find that Plaintiff has proven the amount of damages by the preponderance of the evidence?

"ANSWER: No.

"14. Do you find that the parties contemplated at the time in which they entered into the contract that there could be damages arising out of a breach of the contract?

"ANSWER: No."

Firestone interprets the answer to Interrogatory No. 13 to mean that Midwest did not prove any damages by a preponderance of the evidence. The

trial court found that the answers were not irreconcilable. The court stated as follows:

"With respect to defendant's Motion asserting that the jury's answers to interrogatories Nos. 13 and 14 were inconsistent with the general verdict, the court finds that said answers were clearly not irreconcilable with the verdict; and, that while they may be susceptible to differing interpretations, the answers cannot be taken out of context and scrutinized in a vacuum, as defendant Firestone seeks to do. When considered in conjunction with the evidence presented in this case and the manner in which said interrogatories were framed, the Court finds the answers to be consistent with the verdict rendered, and that substantial justice was afforded the parties to this action."

In construing the evidence in favor of Midwest, it appears that the answers were not irreconcilable when Midwest's interpretation is accepted. Midwest contends that the jury believed that this question was directed at the $754,989.05 amount requested by Midwest during its closing argument. It seems reasonable to assume from the $402,000 general verdict that the jury was not satisfied that Midwest was entitled to an amount of damages equal to $754,989.05. The negative response to Interrrogatory No. 13 reflects the jury's rejection of the "amount of damages" requested by Midwest. However, since the jury was instructed that damages must be proven by a preponderance of the evidence, and since the jury returned a unanimous $402,000 verdict, it is clear that they were satisfied that the $402,000 "amount of damages" had been proven.

The court cannot say that the trial court erred in denying Firestone's motion for judgment notwithstanding the verdict.

Assuming, *arguendo,* that the jury's answers truly were irreconcilable, Firestone still would not succeed due to its failure to move for resubmission of the verdict. After the verdict was returned, the trial court said:

"The interrogatories were perused by the Court and the Court noted that Interrogatory Number 9 had not been answered. The Court inquired of counsel whether or not counsel wished to have Interrogatory Number 9 answered or whether the Defense would accept the interrogatories as submitted by the jury, and the Defense elected to accept the interrogatories as submitted by the jury.* * *"

The record does not reflect that the jury was still present at the time this took place. Firestone waived any objection on grounds of inconsistency by failing to move for the resubmission of the verdict and interrogatories to the jury. Any other decision would encourage jury shopping by litigants, who might preclude resubmission of the verdict merely by waiting to object until after the original jury is discharged. *Haehnlein* v. *Henry* (1987), 41 Ohio App. 3d 233, 234, 535 N.E. 2d 343, 345 (citing *Cundiff* v. *Washburn* [C.A. 7, 1968], 393 F. 2d 505, 507). The second assignment of error is not well-taken.

### Assignment of Error III

"The jury's verdict is against the manifest weight of the evidence because Midwest's damages evidence consisted entirely of self-serving conjecture, speculation and inadmissible hearsay."

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio

St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus. Firestone argues that the evidence relating to damages was based entirely on self-serving conjecture and inadmissible hearsay. We disagree.

Kennedy was not the only witness to testify as to the amount of damages. John Boone, Contracting Officer of the United States Army Tank Automotive Command, testified that he is the sole purchaser of tank pads for the United States government and has been ever since 1969. His testimony contained the following exchange:

"Q. All right. Just to make sure this is clear, here. Nobody buys tank track except the Army, right?

"A. That's correct.

"Q. Nobody in the Army working for the Army except you buys tank track spare parts; is that correct?

"A. That is correct. I am responsible for that.

"Q. So you buy it. And how long has that been true?

"A. Since 1969.

"Q. Since 1969 you have bought every tank track spare part that the Army owns?

"A. I think that's a fair statement."

Boone testified that he fed all the information regarding his tank pad purchases made during the three-year period which controls the profit made from any VECP into his computer, and his testimony was based on that information as calculated by the computer. Firestone objects to the use of this testimony based on the printout as constituting hearsay.

Evid. R. 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

Pursuant to Evid. R. 703, an expert may not base his opinion upon hearsay but must rely upon his own personal knowledge of facts and data submitted as evidence in the case. *Dellagnese* v. *Sorkin, Thayer & Co.* (Mar. 30, 1988), Summit App. Nos. 13036 and 13229, unreported, at 3 (citing *Fireman's Fund Ins. Co.* v. *BPS Co.* [1985], 23 Ohio App. 3d 56, 23 OBR 101, 491 N.E. 2d 365, and *State* v. *Jones* [1984], 9 Ohio St. 3d 123, 9 OBR 347, 459 N.E. 2d 526). The record reflects that Boone testified regarding the IBM calculations of his tank pad purchases. Boone's testimony was based, in part, on the mathematical calculations completed by a computer. As such, his testimony is based on facts, not opinions. Moreover, the record reflects that Boone helped prepare and verified the printout to which he referred. We find no abuse of discretion in allowing this testimony. Firestone's third assignment of error is not well-taken.

### Assignment of Error IV

"The trial court erred in refusing to instruct the jury that Midwest was required to demand performance from Firestone prior to declaring a breach."

Firestone contends that it was reversible error for the trial court to refuse to instruct the jury that Midwest was required to demand performance from Firestone prior to declaring a breach. We disagree.

The law is quite clear that a notice of failure to perform or demand for payment is unnecessary where the obligation to perform is complete and unconditional. *Hacker* v. *Fry* (1984), 17 Ohio Misc. 2d 6, 8, 17 OBR 193, 195, 477 N.E. 2d 477, 478-479. There is a duty to perform and a liability for the breach of a binding promise. In this case, Kennedy's testimony was that the parties agreed to perform right away. Kennedy completed his part, and handed over all the necessary information to Firestone so that the VECP could be tested and processed

quickly. Firestone received this information in May 1979. The VECP was not submitted until May 1980.

In addition, Kennedy was informed by Firestone personnel that the VECP had in fact been submitted. Obviously, after it was submitted, there would be no requirement to make a demand. When Kennedy found out that Firestone indeed had not yet submitted the VECP, he immediately called Firestone and did demand performance.

The jury instructions left it up to the jurors to decide whether the parties contemplated demand as a necessary part of their agreement. The court stated:

"If you find the parties contemplated demand and that the demand was given and the Defendant failed to perform within a reasonable time, you are justified in finding for the Plaintiff. If you did not so find that there was the requirement of demand, then you will — you are justified in finding for the Defense.

"If you find no demand was contemplated by the parties, you are to decide the time issue based upon the instructions that I have given you above. * * *"

It is very clear the the jurors believed the plaintiff's testimony, and by their verdict for the plaintiff found that demand was not required. The weight to be given the evidence and the credibility of the witnesses are primarily for the triers of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. We find no abuse of discretion. The fourth assignment of error is not well-taken. The judgment of the trial court is affirmed.

*Judgment affirmed.*

MAHONEY and QUILLIN, JJ., concur.