OPINION
The Waltons, appeal from an order entered in the Wyandot County Court of Common Pleas granting to defendants summary judgment on five of the seven counts alleged in the Waltons' Complaint. The judgment dismissing the remaining two counts was entered on the Defendant/Appellees' motion pursuant to Civ.R. 12(B)(6) and is not challenged in this appeal.
During the early evening hours of January 3, 1993, Rebecca Walton, her husband and three children were travelling in their van to their home in Columbus from Glandorf, Ohio along State Route 23. As the Walton family approached Upper Sandusky, Ohio their van broke down. Barry Walton, Rebecca's husband, decided to park the van on the roadside until it could be towed to a repair shop. Dwight Kramer, from Bill's Auto-Truck Towing (Bill's Towing), arrived with a tow truck to tow the Waltons' van. Mr. Kramer secured the Waltons' van to the tow truck while Rebecca and her children stayed in their vehicle and out of the rain. After their van was ready to tow, Barry told Rebecca that the family needed to split up for the trip to the repair shop. A sheriff's deputy who had been assisting the Waltons agreed to take Barry and the Waltons' youngest daughter Chelsea with him to the Appellees' garage in his sheriff's cruiser. Mr. Kramer agreed to take Rebecca and her other two children with him in the tow truck.
It was dark and raining when Rebecca and her children left their van to get into the tow truck. Rebecca recalled that the truck was high off the ground and that she needed the assistance of her 16-year-old son and her husband to climb into the truck from its passenger side. Rebecca recalled stepping onto "some big round cylinder thing . . . [that was] flat on top" in order to get into the truck. (Depo Tr. p. 110). Appellants claim in their brief that "[t]he height from the ground to the floor of the tow truck was approximately eight feet." (Appellants' brief p. 1, emphasis added). However, the Appellants have not identified any portion of the record that supports this assertion.[1] The only evidence in the record indicating the distance from the ground to the truck floor, other than Rebecca's statement that she thought it was high, are photographs introduced by the Appellees indicating that the floor of the truck is no more than three and one-half feet from the ground. (Defendant's Reply to Plaintiffs' Motion Contra . . . Summary Judgment, Ex. B-2). Regardless, Rebecca stated that when climbing into the truck she appreciated that it was high and that she needed assistance.
Once Rebecca took her seat in the truck, her husband assisted their daughter Katie onto Rebecca's lap. Rebecca noted she could not locate a seat belt in the truck, but decided not to ask Mr. Kramer where one was located. Katie sat on Rebecca's lap while Mr. Kramer drove to the repair shop near Upper Sandusky. Rebecca recalled that the shop was very dark and it was still raining upon their arrival. Rebecca stated in her deposition that she arrived at the garage before her husband, youngest daughter and the sheriff's deputy. Rebecca recalled Mr. Kramer telling her and her children that he intended to exit the truck, go into the shop and turn on a light so she and her children could wait there while the van was repaired.
Once Rebecca and her son Matt observed a light go on in the shop they discussed whether they should get out of the truck and walk to the shop. After agreeing that was the driver's intention, Rebecca and her 12-year-old daughter, who was still seated on her lap, began to search for a door handle on the passenger side of the truck. Rebecca stated it was dark in the cab of the truck and she could not see to find the handle. Rebecca then heard her daughter Katie state, "Oh, I found it" then felt Katie open the door. (Depo. Tr. p. 27). Rebecca then saw the door swing "all the way open" and felt Katie being pulled outside the truck cab. (Depo. Tr. p. 28). Rebecca held onto Katie with her right arm around Katie's waist, but both mother and daughter fell from the truck. Rebecca stated that she was able to hold Katie on the way down to prevent any injury to her daughter, but Rebecca did injure herself in the fall.
Rebecca recalled that she waited approximately three minutes from when Mr. Kramer got out of the truck before she started to get out of the truck. When asked why she did not stay in the truck longer, Rebecca replied "It was his truck. He told us to get out." (Depo. Tr. p. 36).
The Appellants filed a complaint in the Wyandot County Court of Common Pleas against Bill's Towing, William Schoenberger, (the owner of Bill's Towing) and Dwight Kramer, (the tow truck driver). The counts at issue allege essentially that the Appellees negligently caused Rebecca Walton to fall out of the tow truck injuring herself and causing all members of the Walton family to suffer loss. On November 24, 1998, the trial court entered summary judgment in favor of the Appellees on the five counts at issue in this appeal. The Appellants appeal from that judgment.
 I.
The Waltons raise one assignment of error claiming the trial court erred when it granted summary judgment in favor of the Appellees.
Pursuant to Ohio Civ.R. 56(C), summary judgment is available when the movant establishes the following: 1) that there is no genuine issue as to any material fact; 2) the moving party is entitled to judgment as a matter of law; 3) that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. Bostic v. Connor (1988), 37 Ohio St.3d 144,524 N.E.2d 881. When reviewing a ruling on a motion for summary judgment, the Appellate court undertakes an independent review. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 536 N.E.2d 411, causedismissed, 39 Ohio St.3d 710, 534 N.E.2d 94. Further, if
 the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 145,677 N.E.2d 308, 317, recons. denied, 79 Ohio St.3d 1422,680 N.E.2d 158, quoting Dresher v. Burt (1996), 75 Ohio St.3d 280,295, 662 N.E.2d 264, 275.
Here, the parties agree that Rebecca Walton was on the premises of Bill's Towing as a business invitee. Business owners "owe business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." Seee.g. Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203,480 N.E.2d 474, 475. However,
 An occupier of premises is under no duty to protect a business invitee against the dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.
Sidle v. Humphrey (1968), 13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus; see also, Centers v. LeisureInternatl. Inc. (1995), 105 Ohio App.3d 582, 584,664 N.E.2d 969, 970; and Stacy v. Macke (Dec. 10, 1998), Mercer App. No. 10-98-14, unreported.
In Stacy, supra, a dancer admitted she that appreciated how slippery a dance floor was prior to slipping and falling on the dance floor later the same evening. There, we determined that the owner of the premises was under no duty to warn the dancer of the slippery dance floor because the dancer "already knew of that condition and chose to dance on the floor anyway." Stacy, supra
at p. 7; see also, Centers, 105 Ohio App.3d at 585,664 N.E.2d at 971 (no duty to warn a rider exiting an amusement park ride of a step the rider traversed when getting onto the ride).
Here, Rebecca admitted at her deposition that she knew the truck was high and stated she needed the assistance of two people when climbing up onto the passenger side seat. Further, Rebecca stated she observed that the area around the repair shop was very dark and it was still raining when Mr. Kramer drove her onto Bill's Towing's premises. Finally, Rebecca stated that she observed when first seated in the truck that she could not locate a seat belt. Even if these conditions were unreasonably dangerous, as the Appellants contend, these are all circumstances Rebecca appreciated before she attempted to exit the tow truck. Accordingly, because the Appellees had no duty to warn Rebecca of dangers of which she was aware or reasonably should have been aware, there is no genuine issue of material fact as to whether Appellees owed Rebecca a duty of care. Sidle, supra. Therefore, the Appellees are entitled to judgment as a matter of law. Civ. R. 56(C).
Rebecca did state in her deposition that concerns for her children and the circumstances surrounding their disabled van distracted her from thinking about the height of the truck prior to deciding to exit the truck without assistance. However, even if distracted by concerns about her children, we do not believe her distraction is sufficient to negate her knowledge of the dangerous condition of which she complains. Further, the Appellants do not claim that Mr. Kramer or any of the Appellants did anything to distract Rebecca while she attempted to exit the truck. Cf. Newhardt v. Norton Health Foods (April 29, 1998), Summit App. No. 18478, unreported (held no duty to warn business invitee of step traversed when entering a store when the invitee falls from step while exiting the store, even where the invitee claims to have been distracted by an argument with the shopkeeper).
Finally, the Appellants refer to the affidavit of Donald McCleery, a self described "expert" in the business of tow truck operation who states that in his opinion "it is the duty of the tow truck driver to assist any passenger safely out of the cab of a tow truck even in a completely lighted area . . ." (McCleery affidavit). McCleery stated further that Mr. Kramer's conduct "fell below the standard of reasonable care and caution for tow truck drivers to ensure passengers [sic] safety." Id. The Appellees respond that they nevertheless had no duty to protect Rebecca from dangers known to Rebecca or those she should have reasonably anticipated.
The opinion of Appellants' expert witness is limited. Mr. McCleery states that he was advised of ". . . the background of the Walton case and the facts surrounding Mrs. Walton's fall . . ." (McCleery affidavit). However, McCleery notes only those conditions that existed on the premises of Bill's Towing after
Rebecca had arrived at that location. McCleery does not claim to base his opinion on any of the events that transpired prior to Rebecca's arrival at the garage. Notably omitted are any references to the manner in which Rebecca got into the truck or any statements Rebecca made with respect to how high she thought the truck was when stepping up into it.
McCleery's affidavit, at best, suggests that a tow truck driver breaches a duty of reasonable care to a passenger whohappens to find themselves in an unlit tow truck on poorly lit premises by not assuring that the passenger is safely removed from the cab of such truck. McCleery's affidavit does not, however, express an opinion as to whether a tow truck driver under similar circumstances breaches a duty of ordinary care owed to a passenger who had knowledge of the danger associated with negotiating the great distance between the ground and a tow truck floor. Mr. McCleery's affidavit, by its own terms, is limited to facts and circumstances that are different than those presented here. Evid. R. 705. Accordingly, because McCleery's opinion is not admissible evidence of whether the Appellees breached a duty owed to the Appellants, we may not consider his opinion. Civ.R. 56(E).
The Appellants assignment of error is overruled.
Judgment affirmed.
 HADLEY and WALTERS, JJ., concur.
[1] In support of this assertion, the Appellant's refer to the Deposition of Barry Walton. That deposition, however, was not made part of the record.