OPINION
Plaintiff-appellant, Adel Al-Najjar, appeals from the decision and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, R S Imports, Inc., d/b/a/ Marshall's Cars and Parts ("Marshall's") and Ricart Ford, Inc., d/b/a/ Ricart Automotive ("Ricart"). For the reasons that follow, we affirm.
Appellant is the owner of a 1991 Mitsubishi 3000GT automobile. In early June 1997, appellant contacted Marshall's and spoke to Erik Stearns requesting that Marshall's locate a used 3.0-liter V-6 engine with dual turbochargers for a Mitsubishi 3000GT automobile. Within several days, Marshall's located such an engine, and Stearns advised appellant that the cost of the engine would be $2,500 plus tax. Appellant agreed to purchase the engine and requested that it be shipped to Solomon's Automotive in Ashland, Ohio, for installation in his automobile. The engine was shipped from a salvage yard in Tennessee and arrived at Solomon's approximately ten days later. Rick Miller, an independent contractor using Solomon's facilities, undertook the project of installing the engine in appellant's automobile.
Miller soon found himself in "over his head," and told appellant that he could not complete the installation. At Miller's suggestion, appellant had his automobile towed to Ricart. The automobile was not drivable when it was delivered to Ricart. Some parts were shipped to Ricart in boxes. Ricart was not instructed to evaluate the engine, but, rather, to complete the installation process and put the vehicle back together. Thomas David Price, an authorized Mitsubishi technician, began putting the vehicle back together. Price testified that installation of a 3000 GTE Mitsubishi turbo engine is exceptionally complex, rating it a "ten" in difficulty on a scale of one-to-ten. (Price Depo., at 52.)
During this process, Price discovered that parts of the engine had not been shipped with the vehicle. (Price Depo., at 28.) Price also testified that the prior work had been done improperly including missing bolts, missing motor mounts, and parts installed out of order. (Price Depo., at 67.) Moreover, appellant informed Price that appellant's friend had the engine apart, and it had been left outside. (Price Depo., at 22.) Price discovered that the engine was damaged due to moisture that had gotten in a cylinder. (Price Depo., at 80.) Valves in the head were damaged because of a bad timing belt and a faulty tensioner. (Price Depo., at 80.)
Ricart's employees contacted appellant regarding the need for additional repairs and missing parts. Appellant was also told that the engine could not function properly without the additional repairs. It was recommended that he have the repairs completed before operating the vehicle. Appellant finally requested that Ricart put the vehicle together so that he could drive the car.
In his deposition, appellant stated:
 Q. * * * Ricart advised you about the status of the vehicle and you told them to go ahead and finish whatever they were doing; correct?
 A. Well, this is what happened. After the work was done, the last things that they were working on, they said that we're going to try to fix it. They didn't — They said — From the beginning, they said we're going to fix it, it's going to be running, everything is going to be running for you. But after the work was done, they said, well, you have bad heads, you have to send them out to a machine shop. And I said, okay, I'm going to try to see what I can do. And I brought the heads in after a while, and they did install it. I told them — They did not tell me that there's nothing that they can't do.
 But after they installed the heads, they found that one or two pistons, I don't recall, were still not shooting well. That's when I said, okay — It was already installed. I said, okay, just hook up the last things, whatever, electricity, accessories, things like that, so that I can take the car. Because I don't want to leave it there any more.
Q. Right.
 A. That's when I said go ahead and do it. [Depo. of Adel Al-Najjar at 64.][1]
Appellant drove the vehicle home and immediately began experiencing problems. The car sat idle for approximately one year. One year later, appellant took the vehicle to another repair facility, Paramount Automotive. On the advice of Paramount, the engine was shipped to Robert Zvansky, who partially rebuilt the engine. The engine was returned to Paramount, and Lajos Silberstein, who worked for Paramount until it ceased doing business, was in the process of installing the rebuilt engine into appellant's vehicle.
Appellant subsequently filed the instant lawsuit against Marshall's and Ricart alleging fraud, breach of contract, breach of warranty, negligent and intentional misrepresentation, unconscionable contract, violation of the Ohio Consumer Sales Practices Act, breach of fiduciary relationship, and failure to perform work in a workmanlike manner. Underlying all these claims were allegations that Marshall's sold appellant a defective engine, and Ricart improperly installed the engine. Further, appellant alleged that Ricart failed to inform appellant of the defective engine and that, unless the engine were rebuilt, the vehicle would not run normally even after Ricart completed the installation and the repairs authorized by appellant.
Both Marshall's and Ricart filed motions for summary judgment. The trial court granted both motions on November 9, 1999. On appeal, appellant argues the trial court erred in granting summary judgment.[2]
Appellant first argues that the trial court improperly shifted the burden to appellant to prove his case by a preponderance of the evidence at the summary judgment stage. We disagree.
It is well-settled that when reviewing a motion for summary judgment, an appellate court reviews the judgment independently and without deference to the previous determination by the trial court. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6. The standard of review in this court is de novo. AAAA Enterprises, Inc. v. River PlaceCommunity Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157.
A court is without authority to grant summary judgment unless it can be demonstrated that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267; Civ.R. 56(C). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id.
In this case, the trial court reviewed the pleadings, motions, and evidentiary materials in the case file and found there did not exist any genuine issues of material fact. Specifically, the trial court found that appellant had presented no evidence that the engine in question was defective at the time it left Marshall's hands. (Decision and Entry of November 9, 1999, at 8.) Similarly, with respect to Ricart, the trial court found that no genuine issues of material fact remained to be tried against Ricart because the uncontroverted evidence was that appellant knew the engine in his automobile was performing improperly and that Ricart informed appellant of this fact.
Appellant next argues that the trial court failed to consider the affidavits from appellant's two experts. Appellant claims that these affidavits show that genuine issues of material fact exist as to whether the engine sold by Marshall's was defective at the time of sale and that Ricart caused further damage to the engine as a result of improper installation.
First, there is no evidence that the trial court failed to consider appellant's evidentiary materials. In fact, the trial court clearly indicated in its decision and entry that "[a] thorough review of the documents submitted to the Court, both in support of and in opposition to the instant Motion, and the evidentiary materials relied upon by the parties indicates that defendant Ricart's Motion is well-founded." Similarly, with respect to Marshall's, the trial court stated:
 The filings, pleadings, and evidentiary materials contained in the case file currently before the Court indicate that plaintiff has indeed been damaged as a result of a malfunctioning engine. Those same filings and evidentiary materials, however, indicate that plaintiff cannot prove by a preponderance of the evidence that said engine was defective at the time it left defendant RS's hands. In order to agree with plaintiff and award the damages he seeks, a jury would be required to engage in a great deal of speculation. * * *
Second, appellant has failed to recognize that, after construing those affidavits in a light most favorable to the nonmoving party, they still do not support a genuine issue of material fact. Robert Zvansky, who partially rebuilt appellant's engine, opined that, at the time he received the engine, it had a defective crankshaft, it had been exposed to the elements as evidenced by rusting in the cylinders, and it was not usable in the condition it was in. However, at the time Zvansky received the engine, it had been disassembled, passed through the numerous mechanics and technicians, appellant had driven it, and it had sat idle for approximately one year. Thus, Zvansky's opinion that the engine was defective at the time it was sold to appellant lacks an evidentiary foundation.
The same problems arise with appellant's other expert. After Zvansky partially rebuilt the engine and returned it to Paramount, Lajos Silberstein was asked to reassemble the vehicle in November 1998. Silberstein opined that Ricart Automotive did not adjust the timing belt properly. However, like Zvansky, Silberstein had no knowledge of what happened to the car from the time appellant drove it away from Ricart until he was given the job of reassembling the vehicle. Silberstein testified as follows:
 Q. With respect to the work that you then did for Mr. Al-Najjar, do you know who took the engine out of the car and had it on the floor at Paramount?
 A. Well, there's several people worked over there at Paramount before I got there; and, apparently, it was a project that everybody was involved in removing the engine and then sending it out and having it rebuilt.
* * *
 A. People were coming and going over there all the time * * * [.] [Silberstein Depo., at 15, 16.]
Silberstein was not the person who took the engine out of the car. He did not hear or see it run, he did not know what parts were there or what was missing or broken before it was taken apart. Moreover, Mr. Silberstein testified that "Marv," one of the mechanics at Paramount who worked on the car was not, in his expert opinion, qualified to be working on the car. Id. at 33-34.
In summary, appellant has failed to show the existence of a genuine issue of material fact because he can point to no evidence that Marshall's sold him a defective engine. Because Rick Miller and Solomon's had possession of the engine prior to Ricart, appellant can point to no evidence that Ricart damaged the engine or failed to tell appellant that the vehicle was performing improperly and would continue to do so when they finished putting his vehicle back together. Without a showing on these threshold issues, appellant cannot sustain any of his claims against Ricart and Marshall's. Accordingly, the trial court did not err when it granted summary judgment.
Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
BOWMAN, P.J., and BRYANT, J., concur.
[1] Appellant's deposition was never filed with the court. Ricart attached portions of the deposition to its motion for summary judgment, but the court reporter's certification was not included, and it was not attached as an exhibit to an affidavit. A deposition transcript must be authenticated before it can be considered as legally acceptable evidence for summary judgment purposes. Trimble-Weber v. Weber (1997), 119 Ohio App.3d 402, 406. However, appellant never objected to the trial court's consideration of the excerpts, and, in fact, appellant cites to the deposition in his appellate brief, and in contravention of App.R. 9, has included additional pages from the deposition as an attachment to his appellate brief. As there was no objection before the trial court, the trial court apparently exercised its discretion and considered the deposition excerpts. In light of all these facts, we consider any alleged error that the material does not comply with Civ.R. 56(C) to be waived.
[2] Appellant failed to comply with App.R. 16(A)(3) and include a statement of the assignments of error presented. However, the brief refers to the decision and entry of the trial court sustaining Marshall's and Ricart's motions for summary judgment.