OPINION
Defendant-appellant Superior Metal Products Inc., Employee Benefits Trust ("Trust") brings this appeal from the judgment of the Court of Common Pleas of Allen County granting summary judgment to plaintiff-appellee Immediate Pharmaceutical Services, Inc. ("IPS").
On September 6, 1994, IPS contracted with the Trust to fill its employees prescriptions. This contract provided in pertinent part:
 1. Payment. Sponsor will pay Provider for each new or refill Retail prescription the "Lower of" Provider's usual and customary price as charged to the general public or A.W.P. ("Average Wholesale Price" as listed in the latest revision of the First Data Bank) less 12% for brand name medication and minus 20% for generic medication or Managed Care (MAC), which ever is lower, plus a $2.50 fee for brand name medication and a $3.00 fee for generic medication minus applicable copayment.
 * * *
 3. Drugs Covered. The Retail drugs covered by this Agreement are those drugs requiring a prescription ordered by an authorized prescriber under state or federal law, state restricted, compounded prescription of which has at least one ingredient of prescription strength, transplant medications, AIDS medications, prenatal vitamins, insulin on prescription, and insulin needles and syringes.
* * *
 4. Exclusions. Retail exclusions from the provisions of this Agreement are any charge for therapeutic devices or appliances, support garments and other non-medical substances, regardless of their intended use, all contraceptives oral and/or devices, fertility, investigational/experimental, Rogaine, weight loss medications and injectables except insulin; any prescriptions for an Eligible Participant covered under any Workers' Compensation laws or to which the Eligible Participant is entitled without charge under any local, state or federal program; and any prescription refilled in excess of the number specified by the prescriber or any refill dispensed after one (1) year from the order of the prescriber.
 Prescription Drug Service Agreement, plaintiff's exhibit A. The Trust then hired Berwanger Overmyer Associates ("BOA") to administer the program.
In March of 1997, IPS filled several prescriptions for David Kuehl. Kuehl suffers from hemophilia and requires a very expensive blood agent known as Helixate to survive. The Trust refused to pay for the prescription. On November 19, 1997, IPS filed a complaint to collect the balance due of $273,511.45 for the prescription. The Trust filed an answer denying the allegations of the complaint on January 16, 1998. On April 7, 2000, IPS filed for summary judgment on the breach of contract claim. The Trust filed its motion for summary judgment on May 16, 2000. The trial court granted summary judgment to IPS on July 5, 2000, on the grounds that the Trust had admitted the debt and had failed to timely raise an affirmative defense. It is from this judgment that the Trust appeals.
The Trust raises the following assignments of error.
 The trial court erred in holding that the basis for the summary judgment motion of appellant was an affirmative defense and that accordingly, the court would not consider that issue.
 The trial court erred in granting summary judgment to appellee on the basis that the issue raised in the summary judgment was not raised as an affirmative defense in that the affirmative defense of estoppel was raised by appellant in its original answer.
 The trial court erred in holding that appellee had no notice of the exclusion of injectables issue prior to the time of filing of the summary judgment motion.
 The trial court erred in failing to grant the summary judgment motion of appellant.
 The trial court erred in granting appellee's motion for summary judgment.
 The trial court erred in awarding attorney fees without hearing and appropriate presentation of evidence.
 The first, second, third, and fifth assignments of error all claim that the trial court erred in granting summary judgment to IPS. When reviewing the ruling on a motion for summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 536 N.E.2d 411. Civ.R. 56(C) sets forth the standard for granting summary judgment. Summary judgment is appropriate when the following have been established: 1) that there is no genuine issue as to any material fact; 2) that the moving party is entitled to judgment as a matter of law; and 3) that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. Bostic v. Connor (1988), 37 Ohio St.3d 144, 524 N.E.2d 881.
In this case, the trial court determined that the Trust was admitting a debt was owed, but claiming that they were justified in not paying it, thus raising an affirmative defense. However, the Trust never admitted that it owed the debt. The Trust claims that no debt is owed because the contract specifically excludes the prescription that was filled. This claim is not an affirmative defense, but rather a denial of the allegations. The question is one of law requiring an interpretation of the contract that is the basis of the claim for damages.
IPS claims that summary judgment is proper because the Trust, through BOA, agreed to pay for the Helixate. When the prescription was presented to IPS, it contacted BOA by telephone and was told to go ahead and fill the prescription. This, in effect, amended the terms of the contract since all injectables, except insulin, are excluded by the terms of the contract. Under the terms of the contract, all amendments must be in writing and signed by the parties to the contract. No evidence has been presented that this was done.
Milo Rouse, the Vice-President of third-party administration for BOA, testified in his deposition that when the first request to fill the prescription arrived, he instructed his staff to contact Pacific Mutual, the reinsurer, to determine whether the prescription was covered by the contract. Pacific researched its contract with the Trust and determined that Pacific would cover the excess cost of the Helixate. Based upon this response, BOA agreed to cover the prescription. Later, BOA reviewed the file and determined that Helixate is not a drug covered by the prescription plan, but rather is a "different item necessary for his medical treatment." Rouse depo., p. 33. This deposition also raises the issue of whether Kuehl was eligible for coverage at all times when the Helixate was provided. At the time of the prescription, Kuehl was eligible for Medicare, which may have terminated his status under the plan.
The deposition of Jennifer Steuber, a former employee of BOA, also raises questions of the authorization. She testified that IPS contacted BOA wanting authorization to fill the prescription due to its high cost. Steuber depo., p. 17. At no time did anyone contact the Trust to determine whether it agreed with the decision to cover the prescription. She also testified, that Medicare may have been the primary insurer for Kuehl, not the Trust. Steuber depo., p. 22.
The deposition of Cynthia Hayes, the Vice-President of Human Resources for Superior Metal, indicates that at the time the prescription was filled, Kuehl was not an eligible employee. Hayes also testified in her deposition that the Helixate was a covered drug under the prescription plan. Hayes depo., p. 46. However, Hayes then recanted that statement by affidavit when she later learned that Helixate is an injectable, which is excluded from coverage. This information apparently was available to IPS since they sent the syringes to Kuehl along with the Helixate.
Additionally, the Hayes deposition addressed the contract between the Trust and BOA. The contract specifically provides as follows:
 5.4 Limitation of Authority to Amend. The [Trust] hereby acknowledges that BOA does not have the authority to contract for or amend any insurance policy or contract issued in connection with the Plan.
 This limitation raises the question of whether the Trust ratified the agreement to pay for the Helixate.
 The deposition of Robert E. Marks, President of IPS, indicates that IPSreviewed the plan design document[1] and determined that Helixate is acovered prescription. Marks depo., p. 26. Although Helixate was aninjectable, Marks testified that he remembers they had a reason fordetermining it was covered. However, Marks could not remember why thatdetermination was reached. Id. at 43.
The evidence, when considered most strongly in favor of the non-moving party does not lead reasonable minds to one conclusion. Thus, summary judgment should not have been granted to IPS. The first, second, third, and fifth assignments of error are sustained.
In the fourth assignment of error, the Trust argues that the trial court should have granted summary judgment in its favor. As discussed above, the evidence raises material questions of fact. Thus, summary judgment in favor of the Trust should not be granted. The fourth assignment of error is overruled.
The judgment of the Court of Common Pleas of Allen County is affirmed in part and reversed in part. The cause is remanded for further proceedings.
HADLEY, P.J., and SHAW, J., concur.
[1] The plan design document is a checklist of covered drugs based upon the contract and is an internal document created by IPS to assist in data entry. Marks depo., p. 28.