OPINION
Plaintiff-appellant Robert J. Wisner ("Wisner") brings this appeal from the judgment of the Common Pleas Court of Hancock County granting summary judgment to defendant-appellee Hercules Tire Rubber Co. ("Hercules") dismissing Wisner's complaint.
On November 21, 1997, Wisner was working at the Findlay plant of Hercules as an inspector on the buffer line. On the buffer line, a continuous strip of tread rubber is fed into the line at the first buffer by the operator. It proceeds on the conveyer belt through four additional buffers. After the rubber has passed through the buffer line, the inspector examines it for defects. At times, the rubber gets caught in the buffers causing a jam. When this happens, the operator and the inspector must free the jam so that production may continue.
On this day, a jam occurred in the buffer line. Believing that the jam was at buffer three, the line operator shut down the first three of the buffers, but left the remaining two running. In an attempt to help determine where the jam was located, Wisner went behind the line to check the pulleys for tension. Wisner pulled on the belts attached to the pulleys on the first two buffers without incident and decided not to pull on the third because the operator was working on top of the machine. When Wisner grabbed the fourth belt, his hand was caught between the drive belt and the moving pulley and was injured. No guards were on the machines pulleys and the automatic shut off switch attached to the safety gate was not functioning at the time of the accident. Prior to going behind the line, Wisner did not attempt to manually shut down the line nor did he check to see if it was shut down.
On November 9, 1998, Wisner filed a complaint against Hercules alleging its intentional tort. Hercules filed its answer and later filed a motion for summary judgment. On November 15, 2000, the trial court granted summary judgment to Hercules. It is from this judgment dismissing the complaint that Wisner appeals.
Wisner raises the following assignment of error.
 The trial court erred in granting Hercules' motion for summary judgment dismissing Wisner's claims for intentional tort and loss of consortium.
 When reviewing the ruling on a motion for summary judgment, an appellate court reviews the judgment independently and does not defer to the trial court. Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988), 42 Ohio App.3d 6, 536 N.E.2d 411. Civ.R. 56(C) sets forth the standard for granting summary judgment. Summary judgment is appropriate when the following have been established 1) that there is no genuine issue as to any material fact; 2) that the moving party is entitled to judgment as a matter of law; and 3) that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. Bostic v. Connor
(1988), 37 Ohio St.3d 144, 524 N.E.2d 881.
The Ohio Supreme Court has set forth the requirements for proving an intentional tort.
 [I]n order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108.
The first aspect of the test is whether the employer had knowledge of a dangerous condition. At the time of the injury, Wisner was trying to assist in clearing tread from the buffers. If the line workers could not clear the jam by reversing the conveyor belt, they would have to clear the jam manually by actually grabbing onto the rubber with their hands and pulling on it. This task was one of the job requirements. Hercules was aware of the potential danger to employees and took steps to prevent injury. These steps included placing guards on the first buffer and installing a safety gate to prevent access to the machinery while it was in operation. The gate was equipped with a safety switch that would automatically shut down the line when the gate was opened. However, this switch was frequently bypassed, presumably by the employees. Wisner testified in his deposition that the switch never worked. Ted Charter, a supervisor at Hercules, testified in his deposition that the employees frequently bypassed the switch to save time. Charter also testified that whenever he noticed the switch had been bypassed, he would order it to be restored. However, Charter testified that the switch was once again bypassed on the day of the accident. Rodney Michener, the line operator on the day of the accident, testified in his brief that no switch was ever placed on the gate. Given the disputed testimony on the issue of the safety devices, the issue of whether Hercules knew of the danger is disputed and summary judgment on this issue would be inappropriate.
Secondly, Wisner must produce evidence from which it may be inferred that the employer knew with substantial certainty that harm would occur to the employees performing the dangerous task.
 To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result for the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk something short of substantial certainty is not intent.
 Id. at 118.
Here, Wisner claims that Hercules knew that the automatic shut off switch attached to the safety gate was not functioning, but did nothing and thus knew with substantial certainty that injury would occur to an employee attempting to manually clear a jam from the buffers. This argument is not supported by the undisputed facts. The record shows that although the stop switch on the safety gate was not functioning, Wisner did not expect it to stop the machinery. In his deposition, Wisner testified that opening the gate had not stopped the machinery in the past and he did not expect it to do so this time. Wisner also testified that he did not know which buffers had been stopped. However, Wisner did nothing to ensure that the buffers were stopped. There were five different ways to stop the buffers, including two emergency stops. There was also a control panel which would have indicated which buffers were still receiving voltage and thus, still running. Wisner testified that he knew of the emergency shut off devices and of the control panel. Prior to going behind the line to inspect the buffers, Wisner did not attempt to either shut off all of the buffers or to determine which ones were still operating.
Hercules claims that it did not know with substantial certainty that an injury would occur due to the working conditions. Hercules provided the employees on the buffing line with five different ways to shut down the line before trying to clear a jam or attempting to grab onto the belts on the machine. Additionally, Hercules has no record of employee injuries from or complaints concerning the safety conditions on the buffing line. Although Wisner claims that a light was burnt out over the buffing line preventing him from having a clear view of the machines, the belts and pulleys on the buffer were in plain view when Wisner attempted to grab onto one. Given these undisputed facts, as a matter of law Hercules cannot be said to have known with substantial certainty that an injury would result from the working conditions on the buffing line. Thus, Wisner has not shown that Hercules knew with substantial certainty that injury would occur.
Finally, Wisner must show that Hercules required the employee to perform the dangerous task. There is no dispute that Wisner was required to help clear tread jams on the buffer line as part of his employment. It is also undisputed that sometimes this task required Wisner to go behind the line to work. However, Wisner himself admits that he was not required to go behind the line with the buffers running. Hercules provided several means for shutting down the machines prior to working around them. Wisner just did not avail himself of these methods. Thus, Wisner was not required as a part of his employment to perform a dangerous task and the third requirement set forth in the Fyffe test is not met.
Since Wisner has failed to meet two of the three requirements of theFyffe test, the trial court did not err by granting summary judgment to Hercules. The assignment of error is overruled.
The judgment of the Common Pleas Court of Hancock County is affirmed.
 _______________ Bryant, J.
WALTERS, P.J., and SHAW, J., concur.