OPINION
Plaintiff, Kurt A. Helton, appeals pro se from a judgment of the Franklin County Court of Common Pleas granting summary judgment for defendant, Ohio Adult Parole Authority, on plaintiff's complaint for declaratory judgment.
On October 8, 1999, plaintiff filed a pro se petition for declaratory judgment in which he requested a declaration that defendant violated his constitutional rights in revoking his parole. Defendant filed a motion for summary judgment arguing that because no justiciable controversy existed between the parties, plaintiff was not entitled to declaratory relief. Plaintiff ultimately filed his own motion for summary judgment.[1] By decision filed September 6, 2000, the trial court granted defendant's motion for summary judgment and denied plaintiff's motion. On September 25, 2000, a judgment entry journalized the court's decision. Plaintiff appeals, assigning the following four errors:
 [1.] The trial court errored [sic] when it denied the appellant's motion for summary judgment; based on the record to "one" of appellant's claim; that appellee — Ohio Adult Parole Authority "changed" the reasons for revocation of the appellants parole at a final revocation hearing of parole without the appellant a parolee being present and after returning appellant to prison without first providing the appellant with the minimum due process safeguards under the Fourteenth Amendment of the United States Constitution set fourth [sic] in Morrissey v. Brewer (1972), 408 U.S. 471, L.Ed.2d 485, 92 S.Ct. 2593.
 [2.] The trial court errored [sic] when granting appellees motion for summary judgment as to the claim of unlawful arrest and search of appellant in violation of the appellant's Fourth Amendment rights under the United States Constitution when a justiciable controversy exisit [sic] as to said claim based on the record.
 [3.] The trial court abused its discretion when it denied appellant's motion for leave to amend his complaint pursuant to Civ.R. 15, and R.C. 2721.12 to join interested parties of the Ohio Adult Parole Authortiy [sic] and Kenton City Police Officers and Kenton City Prosecutor; in doing so did not dispose of all interested dispenseable [sic] parties in this cause of action.
 [4.] The trial court abused its discrection [sic] when in denying appellant's motion for continuance of summary judgment proceedings in order to conduct additional discovery, motion for order to compel the appellee to answer admissions, and motion for extension of time to conduct additional discovery, and order to take depositions.
In 1992, plaintiff was convicted of receiving stolen property and sentenced to a prison term of four to ten years. Plaintiff was paroled in June 1997. As one of the conditions of his parole, plaintiff signed a "Conditions of Supervision" form provided by defendant. At the time of signing, the conditions were explained to plaintiff. Condition number one provided: "I will obey federal, state and local laws and ordinances * * * and all orders, rules and regulations of County Common Pleas Court or the Department of Rehabilitation and Correction. I agree to conduct myself as a responsible law abiding citizen." Condition number five stated: "I will follow all orders verbal or written given to me by my supervising officer or other authorized representatives of the Court or the Department of Rehabilitation and Correction." After agreeing to the conditions of his parole, plaintiff was placed under the supervision of James E. Niedekohr, a parole officer with the Ohio Adult Parole Authority.
On March 9, 1998, Niedekohr met with plaintiff and, based upon reports that plaintiff had been consorting with juveniles and providing them alcohol and cigarettes, instructed plaintiff not to have contact with any juveniles. At this meeting, plaintiff signed a document entitled "Special Conditions of Supervision," which included the following statement: "I agree to have no contact (personal, by letter, by phone or other electronic means, or indirectly by way of a third party) with any juvenile under the age of 18 years."
On March 18, 1998, plaintiff was arrested by the Kenton City Police Department pursuant to an "Order of Arrest" issued by the Ohio Department of Rehabilitation and Correction. The "Order of Arrest," signed by Parole Officer Tim S. Johnson, directed the police to arrest plaintiff for violating the conditions of his parole.
On March 25, 1998, plaintiff was notified of the date of his revocation hearing, his rights regarding the hearing, and the charges against him. A revocation hearing was held on April 8, 1998, after which defendant revoked plaintiff's parole based upon plaintiff's admission of the allegations against him. On June 10, 1998, defendant affirmed the revocation and scheduled plaintiff's next parole eligibility hearing for October 1998 pending a Central Office Board ("Central Board") review. On August 31, 1998, the Central Board decided to continue plaintiff's sentence to its valid expiration.
By the first and second assignments of error, plaintiff maintains that the trial court erred in granting summary judgment in favor of defendant. In reviewing a summary judgment, an appellate court must review the judgment independently and without deference to the trial court's determination. Midwest Specialties, Inc. v. Firestone Tire 
Rubber Co. (1988), 42 Ohio App.3d 6, 8. Summary judgment is appropriate only where the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); Tokles Son, Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial. Id. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,358-359.
It is well-established that in order to obtain a declaratory judgment, a party must establish the following three elements: (1) a real controversy between adverse parties; (2) a controversy which is justiciable in character; and (3) a situation where speedy relief is necessary to preserve the rights of the parties. Fairview General Hosp. v. Fletcher (1992), 63 Ohio St.3d 146, 148-149.
By the first assignment of error, plaintiff contends that the trial court erred in finding that no genuine issues of material fact exist as to whether defendant failed to provide plaintiff parole revocation proceedings consistent with the minimum due process requirements established in Morrissey v. Brewer (1972), 408 U.S. 471, 92 S.Ct. 2593.
The parole revocation process typically involves two stages. The first stage is when the parolee is arrested and detained. At stage two, the determination is made as to whether parole should be revoked. State ex rel. Taylor v. Chairman of the Ohio Adult Parole Authority (Dec. 8, 1994), Franklin App. No. 94APD07-971, citing Morrissey, supra, at 485, 2602. The purpose of the second stage is to determine whether the facts warrant revocation. Id. At this stage, "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Morrissey, at 488, 2603.
Because the revocation of parole is not a part of a criminal prosecution, the full panoply of rights available in criminal proceedings is not applicable in a parole revocation. Id. at 480, 2599. However, since revocation does result in the loss of a conditional liberty interest, a parolee is entitled to certain due process rights, including:
 * * * (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. * * * [Id. at 489, 2604.]
In State v. Mingua (1974), 42 Ohio App.2d 35, 40, this court stated that the degree of proof required to justify a parole revocation must be of a "substantial nature," which is less than the "beyond a reasonable doubt" degree of proof required in a criminal prosecution.
Minimum due process requirements are satisfied in cases where the parolee admits the charged parole violation at the revocation hearing. In Morrissey, the Supreme Court stated, at 490, 2604, that "* * * [I]f it is determined that petitioners admitted parole violations to the Parole Board * * * and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter." See, also, State v. Gloeckner (Mar. 21, 1994), Meigs App. No. 520, unreported (Morrissey does not require the state to present evidence in situations where the parolee admits the violation) and State ex rel. Nedea v. Capots (1988), 40 Ohio St.3d 74 (admission of a parole violation constitutes sufficient grounds for revocation of parole).
Once a revocation hearing satisfies minimum due process requirements, unless a parolee is denied parole for a constitutionally impermissible reason, "the decision to deny parole is not subject to judicial review." Mayrides v. Ohio State Adult Parole Authority (Apr. 30, 1998), Franklin App. No. 97APE08-1035, unreported.
The materials provided in support of defendant's motion for summary judgment establish that on March 25, 1998, plaintiff received notice of his preliminary hearing date, his rights regarding the revocation proceedings, and a list of alleged parole violations. Specifically, the notice charged that plaintiff violated condition number one by contributing to the delinquency and/or unruliness of two juvenile girls by providing them alcohol and marijuana. The notice further charged that plaintiff violated condition number five by failing to adhere to the "special condition" that he have no contact with any juveniles.
On April 8, 1998, plaintiff and his counsel attended a revocation hearing before an Ohio Parole Board ("Parole Board") hearing officer. At the start of the hearing, the hearing officer explained to plaintiff that his admission to a particular violation charged in the notice would establish his guilt as to that violation. The hearing officer further explained that if plaintiff denied a particular violation, evidence would be presented on that violation and, based upon that evidence, the hearing officer would make a finding as to whether or not he was guilty of committing that violation. Plaintiff indicated that he understood this process. Thereafter, plaintiff was asked to admit or deny each of the violations charged in the notice. Plaintiff admitted the violations with an explanation. Following his responses, the hearing officer stated that plaintiff's admissions had established his guilt. Plaintiff offered no objection to the hearing officer's statement. Thereafter, during the mitigation portion of the hearing, plaintiff again admitted that he had contact with the juvenile girls and provided them alcohol and marijuana. At the conclusion of the hearing, the hearing officer once again stated that plaintiff's admissions had established his guilt. Based upon these admissions, the hearing officer revoked plaintiff's parole. Thereafter, the hearing officer prepared a "Notice of Findings of Release Violation Hearing," in which it was stated that "Mr. Helton admitted to the above violations, establishing his guilt." The hearing officer explained the findings to plaintiff and inquired as to whether he understood them. Plaintiff responded in the affirmative, offering no objection to the findings. A copy of the findings was provided to plaintiff. Thereafter, on April 10, 1998, the hearing officer prepared a "Revocation Summary," in which it was stated that plaintiff admitted to the violations with an explanation and that he had been found guilty based upon his admissions.
At a hearing on June 10, 1998, the Parole Board affirmed that the violations involved two juvenile girls and occurred only days after plaintiff was instructed not to have contact with juveniles. Based on these findings, the Parole Board scheduled plaintiff's next parole eligibility hearing for October 1998.
On August 31, 1998, the Central Board met to review plaintiff's case. Upon considering his admissions and the probability that his inappropriate activities with juveniles would reoccur, the Central Board determined that plaintiff could not be at liberty without being a threat to society and continued his sentence to its maximum expiration.
Plaintiff contends that he was denied due process because: (1) he did not admit the parole violations at the April 8, 1998 revocation hearing; and (2) the violations used to justify the revocation of his parole on August 31, 1998, were not the same as charged in the March 25, 1998 notice. In support of his first claim, plaintiff relies solely on his affidavit, in which he attests that he denied each of the claimed parole violations in writing. However, plaintiff's self-serving affidavit is entitled to no weight considering that the transcript of the revocation hearing and the hearing officer's findings and revocation summary report clearly confirm that plaintiff admitted the violations.
By his second contention, plaintiff argues that his due process right to "written notice of the claimed violation of parole" was violated on August 31, 1998, when his parole was revoked for "corrupting another with drugs," an offense he was not charged with in the March 25, 1998 notice. Plaintiff's argument is misplaced. The March 25, 1998 notice charged plaintiff with violating condition number one by contributing to the delinquency/unruliness of two juveniles by providing them alcohol and marijuana and violating condition number five by failing to conform to the "special condition" that he have no contact with juveniles. At the April 8, 1998 hearing, plaintiff was again notified of the violations. Based upon his admissions to the violations, his parole was revoked. The August 31, 1998 Central Board hearing was not a revocation hearing; it was a hearing to determine whether to grant plaintiff another parole. Thus, the reasons set forth by the Central Board on August 31, 1998, to deny plaintiff another parole did not serve to alter the violations for which his parole was revoked, as his parole had already been revoked on April 8, 1998.
In short, we find defendant's documentary evidence sufficient to establish that defendant provided plaintiff parole revocation proceedings consistent with the minimum due process requirements established in Morrissey. We further find that plaintiff's summary judgment materials are insufficient as a matter of law to rebut defendant's evidence on this issue. Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of defendant. The first assignment of error is not well-taken.
By the second assignment of error, plaintiff alleges that the trial court erred in finding that no genuine issues of material fact exist as to whether his Fourth Amendment right against illegal search and seizure was violated upon his March 18, 1999 arrest.
R.C. 2967.131(B) provides that a parole officer who is "engaged within the scope of [his] supervisory duties or responsibilities" may conduct a warrantless search of a parolee's person or property if the officer has "reasonable grounds to believe" that the parolee "is not abiding by the law or otherwise is not complying with the terms and conditions" of his parole. In State v. Howell (Nov. 17, 1998), Jackson App. No. 97CA824, unreported, the court defined the phrase "reasonable grounds":
 To satisfy the "reasonable grounds" standard, an officer need not possess the level of certainty required for "probable cause." Rather, the Fourth Amendment's reasonableness requirement for warrantless searches of [parolees] is satisfied if the information provided to the searching officer "indicates * * * only the likelihood * * * of facts justifying the search." [Id. (Citations omitted).]
Further, R.C. 2967.15(A) permits a parole officer to make a warrantless arrest of a parolee, or to order a police officer to make a warrantless arrest, if the parole officer has "reasonable cause to believe" that the parolee is violating a term or condition of his parole. Recognizing that R.C. 2967.15(A) does not define "reasonable cause," the court in State v. Mattison (Sept. 3, 1999), Montgomery App. No. 17554, unreported, adopted the following definition:
 * * * [S]uch state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain honest and strong suspicion that person sought to be arrested is guilty of committing a crime. [Id., citing Black's Law Dictionary (6 Ed. 1990) 1265.]
In the instant case, defendant contends that Niedekohr possessed both "reasonable grounds" and "reasonable cause" to believe that plaintiff was violating the law or the conditions of his parole sufficient to justify the March 18, 1998 search of his residence and his subsequent arrest. In support of this contention, defendant cites the March 31, 1998 "Alleged Parole Violation/Supervision Summary" ("supervision summary") in which Niedekohr reported that on March 5 and 6, 1998, he received information alleging that plaintiff had provided his (plaintiff's) minor son with alcohol and two juvenile girls with cigarettes and alcohol. In order to deter future violations of state law, Niedekohr, on March 9, 1998, instructed plaintiff not to have contact with any juveniles. Plaintiff agreed to this condition. The supervision summary further states that on March 18, 1998, Chief John Vermillion of the Kenton Police Department informed Niedekohr that it had been reported that plaintiff had been staying at a hotel with two juvenile girls. Based on this information, Niedekohr advised Chief Vermillion that if plaintiff were found associating with any juveniles, he was to be arrested. At approximately 11:15 a.m. that morning, the police searched plaintiff's residence and discovered him with a juvenile girl. Upon further investigation, it was discovered that plaintiff had rented a local hotel room for two nights for two juvenile girls and provided them alcohol and marijuana. Plaintiff was arrested pursuant to an arrest order issued by defendant on March 18, 1998.
Defendant argues that presented with the March 5, 6 and 18, 1998 reports, Niedekohr reasonably could have found a "likelihood" and an "honest and strong suspicion" that plaintiff might be associating with juveniles and providing them with contraband in violation of the conditions of his parole. In other words, defendant contends that the information Niedekohr received in those reports regarding plaintiff's actions constituted both "reasonable grounds" and "reasonable cause" to support the search of plaintiff's home and the seizure of plaintiff's person.
Conversely, plaintiff contends that Niedekohr "falsely" claimed in the supervision summary that Chief Vermillion advised him of plaintiff's alleged parole violations prior to the time Niedekohr gave the order to have plaintiff arrested as part of a conspiracy between Niedekohr and Chief Vermillion to "cover-up" an unlawful search and arrest by the Kenton City Police Department. Specifically, plaintiff theorizes that the Kenton City Police Department was conducting an on-going criminal investigation of plaintiff, and because the police did not have probable cause to either obtain a search warrant for plaintiff's property or to arrest him, Chief Vermillion enlisted Niedekohr to falsely claim that Chief Vermillion contacted Niedekohr with information regarding plaintiff's alleged parole violations and that Niedekohr then ordered the police to arrest plaintiff based on these alleged violations. Plaintiff claims that Niedekohr was not advised of plaintiff's alleged parole violations until after the arrest was made, and that Niedekohr and Chief Vermillion later concocted the aforementioned account of events to justify an illegal search and arrest.
In support of his conspiracy theory, plaintiff cites the written deposition of Bruce Mendenhall, the father of one of the juvenile girls with whom plaintiff was consorting, an "Incident Report" and an "Investigative Report" filed by one of the arresting officers on March 18, 1998, and plaintiff's own sworn affidavits. Initially, we note that Mendenhall's written deposition may not be considered, as it was untimely, having not been filed until September 7, 2000, one day after the trial court issued its decision granting defendant's motion for summary judgment. The "Incident Report" establishes only that at 11:13 a.m. on March 18, 1998, officers from the Kenton City Police Department were advised that a juvenile that had been reported missing was in the company of plaintiff and that the officers immediately investigated the situation. The "Investigative Report" establishes only that plaintiff was arrested shortly after the police arrived at plaintiff's residence. These reports do not provide specific facts demonstrating a genuine issue of material fact as to whether or not Chief Vermillion called Niedekohr with information that plaintiff had been consorting with juveniles and that based on this report, Niedekohr ordered the police to arrest him for violating his parole.
With respect to plaintiff's affidavits, we note that they do not comply with the provisions of Civ.R. 56(E), which states in pertinent part as follows:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. * * *
Plaintiff was neither competent to testify to the matters averred in his affidavits, nor were the statements made therein based upon personal knowledge. Plaintiff's affidavits merely show that he was sworn according to law, but do not demonstrate that he had personal knowledge of the matters to which he attests. Plaintiff's self-serving statements regarding an alleged conspiracy between the Kenton City Police Department and Niedekohr do not satisfy the standard of proof required by Civ.R. 56(E). Buemi v. Mutual of Omaha Ins. Co. (1987), 37 Ohio App.3d 113,120.
In short, we find defendant's documentary evidence sufficient to establish that plaintiff's Fourth Amendment rights were not violated upon his arrest on March 18, 1998. Based upon the March 5, 6, and 18, 1998 reports, Niedekohr possessed both "reasonable grounds" and "reasonable cause" to believe that plaintiff was violating the law or the conditions of his parole and to issue a written order to the Kenton City Police Department to arrest and hold plaintiff. We further find that plaintiff's summary judgment materials were insufficient as a matter of law to rebut defendant's evidence on this issue. Thus, we conclude that the trial court did not err in granting summary judgment in favor of defendant.
The state, relying on State v. Benton (1998), 82 Ohio St.3d 316, further argues that when defendant signed his conditions of parole, he waived the Fourth Amendment warrant and corresponding probable cause requirement.[2] It is our view, however, that our rationale set forth above fully supports the warrantless search issue, thus rendering the state's argument moot.[3] Accordingly, the second assignment of error is also not well-taken.
By his third assignment of error, plaintiff contends that the trial court abused its discretion in denying his motion for leave to amend his complaint. On May 4 and 8, 2000, plaintiff sought leave to amend his complaint to add several additional defendants — Niedekohr, Johnson, Chief Vermillion, several members of the Kenton City Police Department and Colleen O'Connell, Kenton City Law Director — claiming these persons were necessary and indispensable parties to the within action pursuant to Civ.R. 19.1(A) since they were involved in the conspiracy against plaintiff. By decision filed September 6, 2000, the trial court denied plaintiff's motions.
"In an action for declaratory judgment in which it becomes apparent that not all interested persons have been made parties, the party seeking relief may join the absent party by amending its pleading in accordance with Civ.R. 15." Plumbers Steamfitters Local Union v. Union Local School Dist. Bd. of Edn. (1999), 86 Ohio St.3d 318, syllabus. Civ.R. 15(A) provides that a party may amend its pleading by leave of court and that such leave "shall be freely granted when justice so requires." Turner v. Central Local School Dist. (1999), 85 Ohio St.3d 95, 99. A trial court's decision to grant or deny a motion for leave to amend a pleading is discretionary and will not be reversed absent an abuse of discretion. State ex rel. Askew v. Goldhart (1996), 75 Ohio St.3d 608,610. An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable. Id.
Civ.R. 19(A)[4] mandates the compulsory joinder of a party if (1) non-joinder of the party prevents the other parties from obtaining complete relief, or (2) if the party to be joined has one of three specific interests in the action. Wilkerson v. Eaton Corp. (Mar. 10, 1994), Cuyahoga App. No. 65182, unreported. In the present case, neither of these two criteria is present to warrant a finding that any of the persons plaintiff sought to join were indispensable parties to the within action.
The only interested party necessary to the adjudication of plaintiff's claims, i.e., defendant, was named in the complaint. Plaintiff failed to offer any proof that the interests of those he sought to add as defendants were not already represented by defendant. Defendant is vested with the authority to grant plaintiff the relief sought in his complaint. By his motion, plaintiff sought to add defendant's agents who acted in the scope of their employment with defendant and had no separate interest apart from defendant in whether plaintiff is granted relief. Plaintiff recognizes such, as he specifically asserts in his brief that he makes no additional claims toward the defendants he seeks to join. For these reasons, we find that the trial court did not abuse its discretion in denying plaintiff leave to amend his complaint. Accordingly, the third assignment of error is not well-taken.
By his fourth assignment of error, plaintiff argues that the trial court abused its discretion in denying his Civ.R. 56(F) motion for continuance, his motion for leave to take depositions, his motion for an extension of time to conduct additional discovery, and his motion for leave to take depositions. Plaintiff argues that the discovery sought was pertinent to his conspiracy theory claim and that the continuances were necessary to allow him additional time to gather evidence in support of that claim.
On May 26, 2000, defendant filed a motion for summary judgment. On June 6, 2000, plaintiff filed a Civ.R. 56(F) motion requesting a continuance of the summary judgment proceedings for the purpose of conducting further discovery. In his supporting memorandum, plaintiff argued that because defendant had failed to respond to his numerous discovery requests, he needed additional time to conduct discovery to properly respond to defendant's motion. Plaintiff filed an affidavit attesting that defendant failed to respond to his requests for production of documents and had objected to plaintiff's interrogatories and declined to respond to his written depositions. Plaintiff attached to his motion a March 1, 2000 letter from defendant's counsel informing plaintiff of defendant's objection to interrogatories served upon Niedekohr on the basis that Niedekohr was not a party to the action and a May 9, 2000 letter from defendant's counsel informing plaintiff that Johnson had declined to respond to written depositions served upon him.
On June 27, 2000, plaintiff filed a "Motion For Leave To Take Depositions And For Order To Appoint Officer Whom Depositions Can Be Taken By or Before." In the memorandum attached to his motion, plaintiff stated that he had requested the Franklin County Clerk of Courts to issue subpoenas compelling non-party witnesses to answer written depositions, but said subpoenas had not been issued. Accordingly, plaintiff sought leave to take depositions before an officer appointed by the court and to have the court order the clerk of courts to issue subpoenas to both defendant and non-party witnesses to appear before the officer appointed to conduct the depositions.
On July 19, 2000, plaintiff filed a "Motion For Extension Of Time To Conduct Discovery" requesting an extension of thirty days past the discovery cut-off date of July 28, 2000. Plaintiff argued in his memorandum that his several failed attempts at obtaining subpoenas from the clerk of courts was due to a "misunderstanding" between he and the clerk of court's office and that his failure to obtain the subpoenas had caused a delay in his efforts to obtain discovery. Attached to plaintiff's motion was a letter filed by him on May 31, 2000, inquiring of the Clerk of Courts as to whether his requested subpoena forms had been issued.
On July 24, 2000, plaintiff filed a "Motion For Order To Compel Defendant to Answer Admissions." The record reflects that on June 19, 2000, plaintiff, pursuant to Civ.R. 36, served on defendant's counsel his requests for admissions and noticed the court of said filing on June 22, 2000. In support of his motion to compel, plaintiff attached a July 17, 2000 letter from defendant's counsel filed in response to plaintiff's request for admissions, in which counsel stated that defendant was awaiting the trial court's decision on its motion for summary judgment before responding to plaintiff's request for admissions. Counsel further stated that in the event defendant's motion for summary judgment was denied, defendant would respond to plaintiff's admission requests within twenty-eight days.
By decision dated September 6, 2000, the trial court denied all four of plaintiff's motions. In denying the Civ.R. 56(F) motion for continuance and the motion for an extension of time to conduct discovery, the trial court concluded that by filing his own motions for summary judgment, plaintiff had effectively asserted that additional discovery was unnecessary, as the record contained sufficient evidence to permit the trial court to rule on defendant's motion for summary judgment. The trial court further concluded that because the record contained numerous exhibits and the discovery cut-off date had passed, plaintiff could no longer conduct discovery without leave of court. Regarding the motion for leave to take depositions, the trial court again based its denial on the fact that the discovery date had passed, and added that since the trial court granted defendant's motion for summary judgment, further depositions would not lead to the discovery of admissible evidence.
As to the motion to compel responses to requests for admissions, the trial court stated:
 * * * [U]nder Civ.R. 36, a party cannot force an opposing party to answer its admissions. When a party fails to respond, all that a party can do is file a motion to have his requests for admissions deemed admitted as true. Plaintiff failed to do this. However, before a court will grant such a request, the requests must be in proper form. Upon review of Plaintiff's Admissions, the Requests are not phrased in such a manner so as to allow Defendant to admit or deny the allegations, as they require narrative responses. Furthermore, there is not at least one inch between the Requests for Defendant to type its answers or to state its Objections. See Civ.R. 36(C). On this basis, Plaintiff's Requests are NOT admitted for purposes of this Case. Plaintiff's Motion to Compel Defendant to Answer Admissions is accordingly DENIED. [Decision, September 6, 2000.]
As an initial matter, we note that a trial court has broad discretion in ruling on motions to compel discovery. State ex rel. The V. Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469. Similarly, the trial court has wide discretion to grant or deny a request for a continuance pursuant to Civ.R. 56(F). Walter v. Alliedsignal, Inc. (1999), 131 Ohio App.3d 253,264. An abuse of discretion involves more than an error of judgment; it implies that the attitude of the court is unreasonable, arbitrary or unconscionable. Askew, supra.
We do not necessarily agree with all of the reasons set forth by the trial court for denying plaintiff's motions. For example, we do not agree that plaintiff's filing of his summary judgment motion constituted his implicit assertion that additional discovery was unnecessary. Plaintiff's summary judgment motion was filed only as to his due process claim, not his Fourth Amendment claim. We also do not agree with the trial court's denial of plaintiff's motion for leave to take depositions on the basis that the grant of summary judgment rendered further discovery inadmissible. The trial court did not grant summary judgment for defendant until early September 2000, over two months after plaintiff filed the motion for leave. Finally, we do not agree that plaintiff's request for admissions required narrative responses. Upon review of the requests, we find that they are phrased in such a manner so as to allow defendant to admit or deny the allegations.
Nonetheless, based upon our review of the record, we find that the trial court's faulty reasoning is not prejudicial to plaintiff. "Where a judgment is correct, a reviewing court is not authorized to reverse such a judgment merely because erroneous reasons were assigned as the basis for the judgment. An appellate court must affirm the judgment if it is legally correct on other grounds, i.e., it achieves the right result for the wrong reason, because such an error is not prejudicial." RGB Joint Ventures v. Developer's Mortgage Co. (May 15, 2001), Franklin App. No. 00AP-834, unreported.
To begin, we note that plaintiff's continuances were filed for the purpose of conducting further discovery on plaintiff's conspiracy allegations. The trial court did not rule on these motions until September 6, 2000. As a practical matter, plaintiff had sufficient time prior to the trial court's disposition of these motions to conduct discovery. Thus, the continuances were unnecessary. Accordingly, we find no abuse of discretion in the trial court's denial of the motions for continuance.
Regarding plaintiff's motions to compel discovery, we note as a threshold matter that there is no authority in law for a court to grant "leave" to take depositions. State ex rel. Draper v. Kane (Aug. 17, 1988), Hamilton App. No. C-880200, unreported. Similarly, we note that a Civ.R. 36 request for admissions is not subject to a Civ.R. 37 motion to compel. Civ.R. 37(A)(2) provides that a party may compel discovery only under rules 30, 31, 33, and 34. Further, as the trial court noted, plaintiff's request for admissions does not comply with the technical requirements of Civ.R. 36(C), as there is not at least one inch between the requests for defendant to type its answers or to state its objections.
Further, the record reflects that plaintiff left unexplored several available means of conducting discovery. For instance, Civ.R. 33 allows plaintiff to serve up to forty interrogatories to be answered by defendant. There is no evidence in the record to suggest that plaintiff served interrogatories on defendant. Further, Civ.R. 30 and 31 allow plaintiff to take, respectively, oral and written depositions of any person, including a party, and Civ.R. 45 allows plaintiff to subpoena any person, including a party, who does not voluntarily provide requested testimony. There is no evidence to suggest that plaintiff attempted to depose defendant through written questions. While there is evidence to suggest that plaintiff attempted to depose non-party witness Johnson, there is no evidence to suggest that plaintiff attempted to depose other non-party witnesses alleged by plaintiff to have been involved in the conspiracy against him. Further, while plaintiff argues in his motions that he attempted to obtain subpoenas from the Clerk of Courts in order to compel the testimony of Johnson and other non-party witnesses, there is no evidence, other than plaintiff's unsworn, self-serving statements and an unauthenticated letter to the Clerk of Courts to substantiate this claim. Because plaintiff did not avail himself of the myriad of discovery avenues open to him under the Ohio Rules of Civil Procedure, we cannot find that the trial court abused its discretion in denying his discovery motions and his motions for continuance to conduct discovery. Accordingly, the fourth assignment of error is not well-taken.
For the foregoing reasons, all four of plaintiff's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
 ___________________ PETREE, J.
KENNEDY McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Various documents are attached to defendant's motion for summary judgment and to the summary judgment motion and addenda filed by plaintiff. These documents establish both the facts set forth in this opinion and the facts upon which plaintiff relies in support of his assignments of error. Under Civ.R. 56(C), only the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact * * *" may be filed as supporting evidentiary materials in a motion for summary judgment. Some of the documents filed by the parties clearly constitute proper summary judgment materials as contemplated by Civ.R. 56(C). However, many do not. There is no provision in Civ.R. 56(C) for the attachment of either certified or uncertified copies of documents in support of a summary judgment motion. The correct method of introducing such items would be to incorporate them into properly framed affidavits pursuant to Civ.R. 56(E). Chapman v. Morris (May 5, 1992), Ross App. No. 1797, unreported, citing Biskupich v. Westbay Manor Nursing Home (1986),33 Ohio App.3d 220, 222; Bartels v. Village of Syracuse (June 7, 1991), Meigs App. No. 448, unreported at 5, fn. 5. Nevertheless, the record in the instant case does not reveal any objection or motion to strike the nonconforming items having been made by either party during the trial court proceedings, and, as a result, any error in the improper submission of those items is waived. Chapman, supra, citing Rodger v. McDonald's Restaurants of Ohio, Inc. (1982), 8 Ohio App.3d 256, 258, at fn. 7; Millisor v. Motorists Mutual Ins. Co. (Nov. 16, 1990), Ross App. No. 1657, unreported, at 4-5, fn. 4
[2] Paragraph nine of the conditions of parole provides: "I agree to a search without warrant, of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. Notice: Pursuant to section 2967.131 of the Revised Code, Officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any property which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision." [Emphasis sic.]
[3] We are aware that in Benton the Ohio Supreme Court held that, consistent with the Fourth Amendment, the state may subject a parolee, as a condition of parole, to random, warrantless searches. Id. at paragraph one of the syllabus. Although Benton addresses the issue of whether a parolee effectively waives his Fourth Amendment protections when he signs a condition of parole authorizing random, warrantless searches, we find that Benton does not fully address the issues involved in the instant case. As the court in Benton recognized, R.C. 2967.131(B) did not exist at the time the defendant signed the conditions of parole. As explained by the Supreme Court: "In Ohio, there was no statutory authority for a search of a parolee's residence until November 9, 1995, four months after the defendant agreed to the conditions of his supervision. After the defendant signed the Conditions of Supervision form, but while he was on parole and before the search in question was conducted, the General Assembly enacted R.C. 2967.131(B). 146 Ohio Laws, Part I, 125. This statute requires field officers conducting a search to have reasonable grounds to believe that the releasee is not abiding by the law or otherwise is not complying with the terms and conditions of his or her conditional release. However, this statute did not exist when the defendant signed the Conditions of Supervision form. Accordingly, this statute cannot create a right that the defendant had already waived." Id. at 319, fn. 3. In the instant case, our primary concern is whether R.C. 2967.131(B) comports with Fourth Amendment protections — an issue not definitively resolved by Benton. See Howell, supra.
[4] Civ.R. 19(A) states in relevant part as follows: "A person * * * shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subroger, or subrogee."